## Richmond.

CREMEANS v. COMMONWEALTH.

December 14, 1905.

1. CRIMINAL LAW—*Continuances—Discretion of Trial Court—Right to Call for Evidence—Opportunity to Prepare for Trial.*—A motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case, and, while an appellate court will supervise the action of an inferior court on such motion, it will not reverse a judgment on that ground unless such action is plainly erroneous. This discretion, however, of trial courts must be exercised with due regard to the constitutional guaranties of a fair and impartial trial to one accused of crime, and the right "to call for evidence in his favor." One accused of crime should be accorded a fair opportunity to prepare for his defense, and to secure the presence of witnesses, if any he has. Such opportunity is not afforded when a prisoner is forced into trial in the absence of material witnesses, by issuing a summons for the witnesses then, and assuring the prisoner that if they arrive before verdict they can testify, and, if not, their testimony may be made the basis of a motion for a new trial.

2. APPEAL AND ERROR—*Refusing Continuance—When Harmless Error.* Although it may appear that a motion for a continuance on account of the absence of material witnesses for an accused should have been granted, yet if it is subsequently made to appear that no such witnesses in fact existed, the accused cannot complain that the motion to continue was erroneously over-ruled, as he has not been injured thereby, and a judgment will not be reversed for an erroneous ruling that could not have been prejudicial to the party complaining thereof.

Error to judgment of the Circuit Court of Giles county, sentencing the plaintiff in error to be hanged.

*Affirmed.*

The opinion states the case.

*Jno. W. Williams* and *A. H. Woodyard,* for the plaintiff in error.

*Attorney-General Wm. A. Anderson,* for the Commonwealth.

WHITTLE, J., delivered the opinion of a majority of the court.

This writ of error is to a judgment of conviction of the plaintiff in error, Morris Cremeans, of murder in the first degree.

It appears that on the night of April 24, 1905, Cremeans shot George Kid, while the latter was in bed at his home in Giles county, inflicting upon him a mortal wound of which he died a few days thereafter. Cremeans was pursued by the officers of the law, arrested the day following the shooting, in Bluefield, W. Va., and brought back into Virginia without a requisition. Having waived a preliminary examination, he was lodged in jail to await indictment and trial.

On May 8, 1905, he was indicted by a special grand jury summoned for that purpose; and, being without counsel, the court assigned two members of the bar to defend him. Thereupon the prisoner moved the court to continue the case until the first day of the next term, on the ground of the absence of material witnesses, and testified in support of his motion that four men were eye-witnesses to the homicide, two of whom were unknown to him, but that the other two, whom he named, were residents of Buchanan county. In further support of the motion, counsel for the prisoner represented to the court, that though they had not had the opportunity of talking with those witnesses, they believed from information derived from the accused that their evidence was not only material but indispensable to his defense.

The motion was resisted by the attorney for the Commonwealth, who introduced the widow and daughter of the deceased, both of whom testified that they were in the room when the fatal shot was fired, "and that the door of the house was closed, and that there were no such witnesses on the outside as claimed by the defendant; or, if there were, they did not know it." Whereupon the court overruled the motion for continuance, and also the motion of the prisoner to set the case for trial at a later day of the term; and he was forthwith put upon trial. The court in that connection observed, that it would award process for the witnesses and permit them to testify, provided they arrived before the trial was concluded; otherwise their evidence would be taken and considered upon a motion to set aside the verdict.

This ruling of the court was made the ground of exception, and constitutes the assignment of error relied on here to reverse the judgment.

There is no rule of practice better settled in this State than "that a motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case; and that although an appellate court will supervise the action of an inferior court on such a motion, it will not reverse a judgment on that ground, unless such action was plainly erroneous. Where the circumstances satisfy the court that the real purpose in moving for a continuance is to delay or evade a trial, and not to prepare for it, then though the witnesses have been summoned and the party has sworn to their materiality and that he cannot safely go to trial without them, the continuance should be refused." This doctrine is laid down in *Hewitt's Case,* 17 Gratt. 627, and the principal case has been followed and cited as authority for the proposition enunciated in numerous decisions of this court. The cases on the subject will be found collected in a note to 17 Gratt. (Va. Rep. Anno.) 441.

While we approve the wisdom of the above-mentioned rule, and are in entire sympathy with its object, which is to prevent unnecessary delay and promote the prompt and effective administration of the criminal law, still the wide discretion vested in trial courts in that respect must be exercised with due regard to the provisions of the Bill of Rights, which secure to one accused of crime a fair and impartial trial; and to that end safe-guard his right "to call for evidence in his favor." Const. of Va., sec. 8, p. ccx.

In deference to that fundamental requirement, we cannot sanction a practice which, in "a capital or criminal prosecution," forces the accused into trial in the absence of his witnesses, upon the theory that they will be summoned and examined if they should arrive before verdict; and, if not that their testimony may be made the basis of a motion for a new trial. Such practice, we conceive, violates both the letter and spirit of the Constitution. In a case of the gravity of the one in question, involving the life of a citizen, we are of opinion that, under the circumstances narrated touching the motion for a continuance, the Circuit Court ought to have postponed the trial for a reasonable time to afford the prisoner opportunity to prepare for his defense. And we have no hesitation in saying, that but for subsequent developments in the case, which, in our opinion, justify the conclusion that there were no such witnesses in existence as those relied on by the prisoner, we should feel constrained to reverse the judgment and award the prisoner a new trial.

It appears, however, both by the return upon the process and the testimony of the deputy sheriff of Buchanan county and the sheriff of Dickenson county, that no such persons lived in either county, or could be found there, and as the sole ground assigned for delay was the absence of these alleged witnesses,

the prisoner could not have been prejudiced by the ruling of the court in the particulars mentioned. Therefore, such ruling does not constitute reversible error; for it is the settled rule of this court, that though the ruling of the trial court may have been erroneous upon some proposition submitted to it, yet if it is apparent from the whole record that the party complaining was not, and could not have been, prejudicially affected by such ruling, it affords no ground for reversing the judgment. *Colvin v. Menefee,* 11 Gratt. (Va. Rep. Anno.) 87, and note; *Kincheloe* v. *Tracewells,* 11 Gratt. 587; *Farmers, &c., Asso.* v. *Kinsey,* 101 Va. 236, 244, 43 S. E. 338.

While it is true that the authorities cited were civil cases, the principle announced is of general application, except when the court is dealing with a mandatory requirement of the law, in which case the principle of *strictissimi juris* obtains. The testimony of the deputy sheriff of Buchanan county and the sheriff of Dickenson county was not controverted, and it would be a vain thing for this court to reverse the judgment and remand the case for a new trial on account of the absence of imaginary witnesses.

On the merits, the record presents a case of unwonted atrocity. The prisoner, who had invaded the home of the deceased in the night-time for an immoral purpose, and made indecent proposals to his married daughter, was ordered off, and for that cause alone shot his defenceless victim while in his bed with his wife, and in the presence of his family.

The other assignments of error were not pressed, and, being without merit, do not demand further notice.

It only remains to say that the judgment must be affirmed.

KEITH, P., *concurring.*

## ERRATA.

The words "KEITH, P., *concurring:*" should appear at the top of page 865, immediately before the concurring opinion delivered by Judge Keith.

The law applicable to continuances, as declared in *Hewitt's Case*, 17 Gratt. 627, is set forth in the opinion of the court. The rule and the exceptions are both clearly stated.

The rule is that the affidavit of the prisoner as to the materiality of an absent witness will entitle the accused to a continuance, or to time to procure his attendance. The exception is that it will not so entitle him if it appears to the court that the object of the accused is to postpone the trial, and not to make preparation for a trial.

This is the issue addressed to the court on the motion for a continuance: Is it made in good faith, or is it a mere pretext for delay? This issue is tendered to and must be decided by the court upon all the circumstances before it. It is addressed to the sound discretion of the court, and the exercise of its discretion, while reviewable, will not be reversed unless it plainly appears that it has been improperly exercised.

In the case before us the accused made the required affidavit, but the Circuit Court, after hearing evidence, concluded that his motion was not made in good faith.

At the moment of the homicide, there were present in the room in which it was committed, the deceased, his wife, his married daughter, a little child who was asleep, and the prisoner. He claims that there were four men on the outside of the house. The wife and daughter say that the door was shut, and that they neither saw nor heard any one else at any time. The weight of evidence then was against the prisoner. But this is not all. It subsequently appeared, by the return of the sheriff and deputy sheriff, and by their testimony, that no such witnesses were found, and that no such persons dwelt in the counties to which the writs of summons were directed at the instance of the accused. It also appears from the testimony of the prisoner that on the night of, and just before the homicide, he went into the

store of W. T. Ould, and that he was accompanied to the store by the four men who were on the outside of the Kid house; but Ould says that the prisoner came into his store alone, and that he neither saw nor heard of any companions of the accused.

On the whole case, I am of opinion that the Circuit Court decided the motion for a continuance in accordance with the weight of evidence, as it appeared when the motion was made and disposed of, and that the conclusion of the court was vindicated by all the facts and circumstances of the case as they were subsequently developed; and on the whole case I fully concur with the judgment of the court.

CARDWELL, J., *dissenting*:

I am unable to concur in the opinion of the court in this case.

How the course pursued by the trial court with reference to the motions made for a countinuance and to lay the case over to a later day of the term, in order that counsel might confer with the prisoner and prepare for his defense, made in the utmost good faith, as counsel assured the court, can be condemned as it is in the opinion, and yet it be held that the denial of these motions was harmless error, is beyond my comprehension.

The offense with which the prisoner was charged was committed on April 24, 1905. The prisoner was arrested in Bluefield, W. Va., the next day, and voluntarily returned to Giles county, where he was lodged in jail to await indictment by the grand jury; he having waived a preliminary examination before a justice. The regular grand jury terms of the court of Giles county are February and September, and prisoner did not know and had no reason for knowing that a special grand jury would be impaneled to consider his case, and had therefore made no preparation for the trial, when, on the 8th day of May, 1905, a special grand jury was impaneled and brought in an indictment against him for murder in the first degree. The prisoner being

unprepared for trial, without counsel to conduct his defense, and without means to employ counsel, the court appointed two members of the bar to defend him, and the trial was immediately gone into.

Even after the refusal of the continuance asked by the prisoner, to which he was entitled, as the opinion of the court admits, and the request of counsel that the case be laid over till a later day in the term that they might properly prepare the prisoner's defense, was denied, the trial court saying, that "it would award process for the witnesses and permit them to testify provided they arrived before the trial was concluded; otherwise this evidence would be taken and considered upon a motion to set aside the verdict;" and after the evidence for the Commonwealth had gone to the jury, counsel for the prisoner again asked that the case be passed until the summons addressed to the sheriff of Buchanan county on the first day of the term had been returned, and this request was also denied.

It will be observed that the opinion of the court, after discussing the rights of one accused of crime which are to be safeguarded, and stating the course pursued at the trial of the prisoner, says: "Such pratice, we conceive, violates both the letter and spirit of the Constitution;" yet it is held that the several errors committed by the court below were harmless, because it appears "both by the return upon the process and the testimany of the deputy sheriff of Buchanan county, and the sheriff of Dickenson county, that no such persons lived in either county, or could be found there, and as the sole ground assigned for delay was the absence of these alleged witnesses, the prisoner could not have been prejudiced by the ruling of the court in the particulars mentioned."

This leaves out of view the fact that the prisoner had been afforęd no opportunity whatever to be prepared to refute the

statements made by the deputy sheriff of Buchanan county and the sheriff of Dickenson county, after he had been tried and convicted, and assumes, to the prejudice of the prisoner plainly, that these officers knew every person who could be found in their respective counties, although they did not profess to have such knowledge. Was it to be expected, under these circumstances, that the prisoner would be prepared to refute the statement of these officers? Surely not. Who knows but that, by reason of these persons whom prisoner desired as witnesses being at or near the deceased's house when the alleged crime was committed, and the excitement in the neighborhood over the occurrence, they were in hiding in the apprehension that they might be considered as *particeps criminis*? The widow and daughter of the deceased, it will be observed, qualify materially their statement that "there were no such witnesses on the outside of the house, as claimed by the defendant," when they add, "if there were they did not know it."

Of course, whenever it is made to appear that the application for a continuance is for the mere purpose of evading, or to delay a trial, the continuance should be denied. In *Hewitt's Case,* cited in the opinion of the court, the indictment for assault and battery was found April 25, 1863, the accused was arrested September 23, 1863, and admitted to bail. There was no term of the court of Bedford county till April, 1864, when the case was called for trial. The accused was not present when his counsel made a motion for a continuance, based on the affidavit of the accused as to the materiality of a witness who had been summoned but was absent, made two days before, and on the morning that the motion was made the accused was at Liberty (the county seat), and left going west, not saying where he was going. *Held,* that the trial court did not err in its opinion, "that

the defendant was attempting to *evade* a trial by absenting himself from court, so as to prevent a personal examination in open court on his motion for a continuance."

That case and the case before us are wholly dissimilar.

The cases cited in the opinion of the court in this case in support of the conclusion that the prisoner was not prejudiced by the rulings of the trial court complained of by the prisoner are all civil cases, in which the court was dealing only with the question, whether or not the party complaining was prejudiced by instructions given or refused, and not with the question presented in this case.

The case before us involves human life, and the question to be determined is whether or not the citizen condemned to suffer the extreme penalty of the law has had that fair and impartial trial guaranteed to him by the Constitution of the State. In the consideration of that question, the enormity of the crime charged, and the evidence in support of the charge, are to be left out of view, for however grave the charge, or incriminating the evidence in support of it or how the accused's station in life may be, he was nevertheless entitled to the trial the mandate of the Constitution of the State requires in all cases involving the life or liberty of the citizen.

If, however, we are to look to the evidence for the prosecution in determining the question, whether or not the prisoner in this case has had such a trial—which, I repeat, we have no right to do—a horrible murder has been committed by him, and if, upon such a trial, he had been found guilty of the crime charged against him, he would rightly share the fate that now awaits him; but not without such a trial, as appears plain to me. Although the Commonwealth was, in the acquisition and submission of its evidence, unhampered, it fails to show malice on the part of the prisoner towards his victim, or that there was any premeditation in the act of shooting him; while the theory of

the prisoner's defense was, that the shooting was accidental, and he, who alone testified in his behalf, so testified. The record does not, in my opinion, justify the statement in the opinion of the court, that the prisoner invaded the home of the deceased, etc. On the contrary, it appears that he had been there that very evening of the shooting as the guest of the deceased, on the most friendly terms, and had been absent from the house but a very short while when he returned to look for something he claimed to have left or missed after he went away.

Under the circumstances surrounding the trial of the prisoner, can it be safely said what the verdict of the jury would have been had the trial court done what clearly it should, at least, have done, postponed the trial for a reasonable time to afford the prisoner an opportunity to prepare for his defense? I think not.

Far better and safer, in such a case, as it seems to me, to award the prisoner a new trial, than to carry the doctrine of harmless error to the extent of establishing the dangerous precedent that a trial court may impose upon one accused of a crime a hardship and a wrong, and then put him upon terms of extricating himself, in the event the jury finds him guilty, without affording him an opportunity to do so, and bind him to the results by subsequent testimony taken and considered by the court, which the victim of the practice could not, under the circumstances, by any possibility have refuted.

In stating my views of this case, I have done so with the utmost deference to the views of the majority of the court, and of the learned and conscientious judge who presided at the trial in the Circuit Court; but, believing as I do that a very dangerous precedent is to be established in the refusal of a new trial to the prisoner, I deemed it necessary to state my reasons for dissenting.

*Affirmed.*