# Richmond

GARLAND SMITH v. COMMONWEALTH OF VIRGINIA.

January 15, 1931.

Present, Campbell, Holt, Epes, Hudgins and Browning, JJ.

1112

*Gordon B. Ambler*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Garland Smith, twenty-two years old, is a native of Catawba county, North Carolina, and resided there until he came with his parents in September, 1929, to Mecklenburg county, Virginia, to live upon a farm which they had rented.

On Sunday, December 29, 1929, Bernard A. Puryear, a deputy sheriff, and officers J. T. Chaney, Mack Tuck, Stover Terry, C. O. Mullins and J. A. Hutchins, raided a still near Boydton and arrested upon that occasion W. J. Smith, his father, R. K. Smith, his uncle, and Burton Smith, his brother. After the still was destroyed the party with their prisoners started down what is described as a "plantation road." The procession moved forward "sheep fashion," Mullins leading, followed by Puryear and Tuck. Next came the prisoners, and the procession was brought up by Hutchins and Terry. From ambush two gun shots were fired in rapid succession, fatally wounding Puryear and Tuck.

Garland Smith about this time returned to his North Carolina home and was arrested in the adjoining county of Lincoln on January 25, 1930. He was brought back to Mecklenburg county and by order of Hon. E. W. Hudgins, then circuit judge there, was, in the interests of peace and good order, remanded for safe-keeping to the custody of the sheriff of Henrico county to be kept "until he is wanted at the February term, 1930, for trial." This vacation order bears date of January 29, 1930.

The Circuit Court of Mecklenburg county convened in regular session on Monday, February 17, 1930, to which

term a special grand jury had been summoned. It returned an indictment on that day charging Garland Smith with the murder of Bernard A. Puryear. Trial was set down for the 18th. A jury was impaneled on the 18th and the case was adjourned over until 10 o'clock on the 19th. Evidence was heard on the 19th, and on the 20th this verdict was returned:

"We, the jury, find the defendant, Garland Smith, guilty of murder in the first degree and fix his punishment to be death."

It was confirmed by the trial court on the same day. Execution was set for June 2, 1930, and the prisoner was remanded to the custody of the sheriff of Henrico county for safe-keeping.

For reasons, which will hereafter appear, we shall not undertake to discuss the evidence or its sufficiency, but to understand the issues we should know that some of the Commonwealth's witnesses claim to have recognized Garland Smith as the assailant at the time of the shooting. For the accused it is contended that he was then in North Carolina.

Before arraignment on the 18th, the accused asked that the trial be postponed. His bill of exceptions shows that he asked for a "continuance," but his written petition in support of this motion asks that "the trial be delayed until some day later this week." The order of the court, entered on February 18, 1930, reads: "The defendant, by counsel, moved the court for a continuance until a later day of this term, which motion the court overruled and the defendant excepted." In the petition for a writ of error it is said that forty-eight hours time was asked for. It is clear that the request was only for a postponement until some later day in the term, and it is probable that his written petition filed with his motion for a continuance accurately states the indulgence sought. When Smith was

arrested he was taken, as we have seen, immediately to Richmond, and so was not in touch with his people either at his old home in North Carolina or at his new home in Virginia. Mr. A. A. Whitener, a North Carolina attorney of wide experience, was retained by relatives of the accused to defend him. A short time before the trial Mr. Whitener's sister was taken suddenly and desperately ill. In that emergency he sent his son and partner, L. A. Whitener, to represent himself and the accused. This son, in a petition for time, laid the foregoing facts before the court. He said that he had had no opportunity to interview his client and had not talked with the witnesses. The court's ruling was:

"It appeared that the accused had been confined in Richmond since February 1, 1930, and that the accused had had ample time in which to employ counsel and yet he had not seen fit to employ counsel until only a few days before the trial; that it was no ground for a continuance and that it is evident from the statement of counsel that even Mr. A. A. Whitener had only been spoken to a very short time before the trial, and that the fact that counsel had only recently been employed, although the accused had had ample time to employ counsel and ample opportunities so to do, rendered this motion for a continuance not sufficient grounds for granting a continuance."

This is not a case in which a man had employed two lawyers. The elder Whitener alone was retained and retained presumably because of his experience as a criminal lawyer. In the emergency which presented itself he was unable to represent his client and so did the best he could. He sent his son.

Code section 4893 provides that felony cases shall be tried at the term in which the indictment is returned unless good cause for a continuance is shown, while the bill of rights, section 8 of the Constitution of Virginia, secures to the accused a fair and impartial trial and gives to him the right "to call for evidence in his favor."

██ It has been repeatedly held that continuances are within the sound judicial discretion of the trial court. *Cremeans* v. *Commonwealth*, 104 Va. 860, 52 S. E. 362, 363, 2 L. R. A. (N. S.) 721. Many cases on this subject are cited in annotations to *Hewitt* v. *Commonwealth*, 17 Gratt. (58 Va.) 627. Just punishment long delayed is of little value as a public warning and so we have steadily upheld trial courts in the exercise of their discretion; nor do we for a moment forget the importance of speed in the disposition of the docket. A prompt trial should be had and any motion for a continuance which savors of delay or of a purpose to evade trial should not be tolerated. An ideal system of laws would be one in which speedy justice is administered, but justice and not speed should be its paramount purpose. Its even-handed administration "is a part of ordered life and justice and the long still grasp of law." Clamor should find no echo in its administration.

In *Cremeans' Case*, Judge Whittle said: "* * the wide discretion vested in trial courts in that respect must be exercised with due regard to the provisions of the bill of rights, which secure to one accused of crime a fair and impartial trial; and to that end safeguard his right 'to call for evidence in his favor.'" In *Myers* v. *Trice*, 86 Va. 835, 11 S. E. 428, 430, the court said: "* * * if there is no sufficient reason to induce the belief that the alleged ground of the motion is feigned, a continuance should be granted, rather than to seriously imperil the just determination of the cause by refusing it." *John Brown's Case*, Am. Bar Asso. Journal, Dec. 1930.

█ Of course the constitutional guarantee of a speedy trial carried into section 4926 of the Code 1919, as amended by Acts 1928, chapter 16, is for the prisoner's protection, and as against him is no warrant for undue haste.

██ Whitener, Sr. was, as we have seen, retained as counsel. He had prepared the case and his son was rela-

tively unfamiliar with it. The son's request that he be given two or three days in which to familiarize himself with the situation and to prepare and present his evidence was not unreasonable. Unavoidable absence of counsel has been held to be ground for a continuance. *Hook* v. *Nanny*, 4 Hen. and M. (14 Va.) 157, note; *Radford* v. *Fowlkes*, 85 Va. 820, 8 S. E. 817; *Myers* v. *Trice*, 86 Va. 841, 11 S. E. 428; *Rossett* v. *Gardner*, 3 W. Va. 531; *Moore* v. *Moore*, 72 W. Va. 260, 78 S. E. 99; *Rhode Island* v. *Massachusetts*, 11 Pet. 226, 9 L. Ed. 697. In this latter case the Attorney-General of Rhode Island moved for a continuance because his associate, Mr. Hazard, who was relied upon to close the argument, was too ill to attend and there was not time to employ and instruct other counsel. The Attorney-General of Massachusetts opposed the motion. Chief Justice Taney ordered the cause to be continued.

■ In this case the record does not support a motion for a continuance and it was not asked for. A continuance would have involved a delay of two months or more. The request was for a postponement to some later day in the current week.

■ An *alibi* is relied upon. Smith claims that at the time of the homicide he was at his old home in North Carolina, and that witnesses from that community, if present, would testify to that effect. If he was given no real opportunity to secure this evidence, the constitutional guaranty which gives to him the right to call for evidence in his favor went for naught, and was but a promise to the ear.

It is true that in *Hurd* v. *Commonwealth*, 5 Leigh (32 Va.) 715, a prisoner, indicted on the 10th of June was brought to trial on the 12th. He moved for a continuance which was refused. In that case a continuance was asked for.

In *Thompson's Case*, 131 Va. 847, 109 S. E. 447, 453,

trial as here followed upon the heels of an indictment. A continuance was requested and refused. The court said:

"Nor does it appear that prisoner did not have a fair and impartial trial; that he did not have all persons present as witnesses who knew anything that was favorable to him, or that his counsel did not make as good a defense for him as he could have done if his case had been continued."

We have already pointed out that no continuance was asked for in the instant case and so these authorities do not control.

It cannot be seriously claimed that an opportunity was given the prisoner to have present all witnesses who might give material evidence in his behalf. Catawba county is about 300 miles distant from Mecklenburg county. The indictment was returned one day and set then for trial on the next. An *alibi*, if sustained, would, in all probability, have to rest upon the evidence of his Carolina neighbors, who, as a physical fact, could not possibily have been present unless they had come by airplane. Some witnesses did testify in support of this *alibi*, but he was entitled to have presented like evidence from others if he could secure it. *Baimonte* v. *State*, 101 Tex. Cr. Rep. 622, 276 S. W. 921, 41 A. L. R. 1527.

It is true that this exceptant is not within the rule which usually governs petitions for a continuance. He filed no affidavit. That may have been because his counsel was from another State and not familiar with Virginia practice. It may have been because as stated in his application for a writ of error he was told that an affidavit was unnecessary. Our judgment does not depend upon its existence. We are of opinion that a man who is indicted and whose home is 300 miles from the point of trial and who sets up an *alibi* which must be proven by his neighbors, should be given more than twenty-four hours in which to produce his witnesses. We do not mean to indicate that

he was entitled to a continuance. He was not entitled to one on this record, but he was entitled to have the hearing postponed, both for this reason and because counsel who was charged with the preparation of his defense was unavoidably absent.

Objection is made to this instruction: "The court instructs the jury that every killing done with a deadly weapon in the previous possession of the accused is *prima facie* murder in the first degree."

Instructions are to be read in connection with the evidence to which they apply and so this instruction in this case did no harm, but on a retrial of the case it should not be given. A homicide is at times accidental and at times is committed in heat of passion or in self-defense. In such cases the instruction would be harmful.

That admonition given in *Thompson* v. *Commonwealth, supra,* may be repeated: "It may be said that the trial courts are not infrequently at fault in failing to give precisely in their usual form approved instructions that in a measure have become standardized."

An instruction on reasonable doubt was tendered and refused. The instruction itself was unobjectionable but that subject had been covered by other instructions and so it was properly rejected.

When a court has once, in apt language, told the jury that the burden is upon the Commonwealth to prove the guilt of the accused beyond all reasonable doubt, that is enough. Reiteration of this elementary proposition is neither helpful nor desirable.

Objection was made to this instruction: "The court instructs the jury that if, after considering all the evidence, they have an abiding conviction of the guilt of the accused, then they are satisfied beyond a reasonable doubt as that term is used in the law." It is said that "reasonable doubt" should have been defined.

Attempts to define "reasonable doubt" usually cloud rather than clarify the issue. This is an excerpt from one of the instructions given in *McCue's Case*, 103 Va. 870, 49 S. E. 623. It would have been better to have given the whole of the instruction from which it is taken, though in the light of the other instructions in this case it cannot be said that this instruction either confused or misled the jury.

A witness for the Commonwealth was asked if he had not been indicted for or convicted of a criminal offense. An objection to this question was sustained. It is not proper to ask a witness if he has been indicted, and it is not proper to show that he has been convicted of an ordinary misdemeanor, but it may, for purposes of impeachment, be shown by the witness himself that he has been convicted of felony or of perjury. Code, section 4779. *Davidson* v. *Watts*, 111 Va. 394, 69 S. E. 328. There are other exceptions taken to the admission of evidence, but they are not particularly important, and there is no reason to think that the matters with which they deal will again be presented in any objectionable form.

For reasons stated we are of opinion that the judgment of the court below should be reversed, and this case retried at some date which will give the accused a reasonable opportunity to present such evidence on his behalf as he desires to present, and it is so ordered.

*Reversed and remanded.*