## Richmond

### JOE LOUIS GILCHRIST

### V.

### COMMONWEALTH OF VIRGINIA

Record No. 830787.

June 15, 1984.

Present: All the Justices.

*Bruce D. Jones, Jr. (Bernard B. Milbourne,* on briefs), for appellant.

*John M. McCarthy, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

This appeal concerns a defendant's right to discover evidence and have a reasonable time thereafter to prepare for trial.

In a bench trial, Joe Louis Gilchrist was convicted of the first-degree murder of Allen Wade Eddington and sentenced to 30 years in the penitentiary. He also was convicted of breaking and entering in violation of Code § 18.2-91 and unlawful use of a firearm in violation of Code § 18.2-53.1, for which he received sentences of five years and two years, respectively.

Eddington's body was discovered in the early morning of September 16, 1982, and Gilchrist was arrested later that day on a capital murder charge. The following day, the General District Court of Accomack County appointed an attorney to represent him. Ten days later an additional attorney was appointed.

The district court conducted a preliminary hearing on October 1 and certified the case to a grand jury, which returned a four-count indictment on October 4, charging the defendant with capital murder, armed robbery, unlawful use of a firearm, and breaking and entering. Two days later, the Commonwealth's Attorney's secretary informed one of Gilchrist's attorneys that the trial would commence on October 19. Neither defense counsel was consulted regarding the trial date.

Gilchrist filed a motion for discovery pursuant to Rule 3A:14* on October 8, and on October 15, the trial court ordered the Commonwealth to produce various objects and documents including the autopsy reports, ballistic tests, blood tests, and photographs.

At an October 12 pretrial conference, Gilchrist moved for a continuance of the trial on the grounds that he had not yet obtained a transcript of the preliminary hearing, a toxicological report, and a serological report. Noting that the trial date was just one week away, his counsel represented that they had not completed their investigation and they needed time to review the expert testimony and "prepare scientific strategy." The Commonwealth's Attorney represented that the two reports would be available in "one or two days." The trial court denied the continuance because migrant workers, who were material witnesses, would be leaving the area in the Fall.

---

* Rule 3A:14 reads in pertinent part:

(b) *Discovery by the Accused.*

(1) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the attorney for the Commonwealth, and (ii) written reports of autopsies, ballistic tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the accused or the alleged victim made in connection with the particular case, or copies thereof, that are known by the Commonwealth's attorney to be within the possession, custody or control of the Commonwealth.

(2) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, that are within the possession, custody, or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable.

On October 15, the trial court conducted a hearing on the defendant's motion to have some of his statements suppressed at trial. The motion was denied. At this time, Gilchrist again moved for a continuance because he had not received the toxicological report and the report of the local medical examiner. The court denied this motion.

On the day before trial, despite the discovery order, defense counsel had not received the local medical examiner's report, the final autopsy report, and certain autopsy photographs. Counsel also were unaware of gunpowder-residue tests, an analysis of a cartridge and slug, evidence respecting the order of cartridges in the alleged murder weapon, and the identification of the slug removed from the victim's body.

During the late afternoon of that day, the Commonwealth's Attorney notified defense counsel that he had more autopsy photographs and the toxicological reports which previously had not been furnished to the defendant. Moreover, the Commonwealth's Attorney revealed the victim's blood alcohol level and the fact that he had been taking Dilantin, and anti-seizure medication. On the evening of October 18, the Commonwealth's Attorney called defense counsel and advised that the slug removed from the victim's body was a "la cascade" and that, upon further analysis, wood fiber was found on another slug.

Before trial began on October 19, Gilchrist renewed his motion for a continuance on the grounds previously mentioned and on the further ground that he had not received full discovery in accordance with the court's order. Again, the court denied the continuance.

When the trial commenced, Gilchrist had not been furnished the final autopsy report. (Defense counsel finally saw this report for the first time when the state deputy chief medical examiner presented it to them while he was testifying.) Defense counsel never received the local medical examiner's report or the report of the gunpowder-residue test-firing results. Gilchrist unsuccessfully moved for a mistrial because he had not been furnished this evidence pursuant to the discovery order. When evidence was introduced that the "la cascade" spent cartridge was the third cartridge which had been fired, Gilchrist made another motion for a mistrial because this evidence was never made available to the defense in the course of discovery. The court denied the motion.

The defendant contends that (1) discovery was defective either because it was tendered so late as to be useless or was not produced at all, and (2) he was forced to trial in a serious, complex case without time to prepare. Gilchrist asserts that his attorneys had no knowledge of the existence of gunpowder-expulsion tests or the physical evidence relating to the order of spent cartridges in the cylinder of the gun until the Commonwealth presented these matters at trial. This evidence, he argues, was "the key to the Commonwealth's theory of first degree murder," because it established the order in which the wounds were sustained and the distance between the defendant and victim when each shot was fired. On brief, he summarizes his argument as follows:

> The fact that a week before trial scientific evidence such as the toxicological analysis, serological analysis, x-ray analysis, and forensic results was known to exist or known to be in the process of being generated was in itself sufficient to mandate the granting of a continuance in any case but especially in a capital case.

The Commonwealth responds that Gilchrist received all laboratory reports in a timely manner as they became available, and a motion for a continuance is addressed to the sound discretion of the trial court. It claims that material witnesses may have been lost had a continuance been granted.

We agree that granting a continuance is a discretionary decision and the trial court's ruling will not be reversed on appeal unless it is plainly wrong. *Parish* v. *Commonwealth*, 206 Va. 627, 631-32, 145 S.E.2d 192, 195 (1965). We appreciate the trial court's dilemma in the present case. Migrant farm laborers, who were material witnesses, were due to leave the area in the near future. A trial court should be encouraged to keep its criminal docket current. Indeed, both the Federal and Virginia Constitutions, as well as statutory law, mandate a speedy trial for an accused, and failure to provide a defendant a speedy trial can result in a dismissal of an indictment. *See, e.g., Godfrey* v. *Commonwealth*, 227 Va. 460, 317 S.E.2d 781 (1984), this day decided.

Nonetheless, an accused has a constitutional right "to call for evidence in his favor," Va. Const. art. I, § 8, which includes the right to prepare for trial by procuring both testimonial and documentary evidence. *Cox* v. *Commonwealth*, 227 Va. 324, 328,

315 S.E.2d 228, 230 (1984). In order to prepare for trial, an accused and his counsel must have sufficient time to investigate the case and to evaluate the evidence that is procured.

In *Cox*, which was decided after the trial court ruled in this case, the defendant was charged with embezzlement. Pursuant to Rule 3A:15, she obtained a subpoena *duces tecum*, which directed certain banks to produce various records. A large percentage of these records were not produced, and three days before the scheduled trial date, Cox moved for a continuance, contending that the records were material to her defense. The trial court denied the continuance, ruling that the records were not material. Reversing this decision, we stated: "In our adversary system of criminal justice, all relevant facts must be available to both the prosecution and the defense in order to preserve the system's integrity." *Id.* at 328, 315 S.E.2d at 230.

Furthermore, we have held that, although granting or denying a continuance is within the discretion of the trial court, it must exercise its discretion "with due regard to the provisions of the Bill of Rights, which secure to one accused of crime a fair and impartial trial; and to that end safe-guard his right 'to call for evidence in his favor.'" *Cremeans' Case*, 104 Va. 860, 863, 52 S.E. 362, 363 (1905). *See also Smith* v. *Commonwealth*, 155 Va. 1111, 1117, 156 S.E. 577, 579 (1931); *Myers and Axtell, Receivers,* v. *Trice*, 86 Va. 835, 837, 11 S.E. 428, 429 (1890). When a court has no reason to believe that a motion for a continuance is spurious, it should seriously consider whether a failure to grant the continuance may "imperil the just determination of the cause." *Myers* at 842, 11 S.E. at 430. As we said in *Smith*: "An ideal system of laws would be one in which speedy justice is administered, but justice and not speed should be its paramount purpose." *Smith* at 1117, 156 S.E. at 579.

In the present case, Gilchrist's counsel were not afforded a reasonable time to investigate and prepare the trial of a serious, complex case. They had only 15 days between the indictment and trial, and the earliest that any reports on scientific evidence were available to them was less than a week before trial. Some of this evidence was made known to defense counsel the day before trial, and other material was produced for the first time at trial. Moreover, some of the material specified in the discovery order was never submitted.

■ While the Commonwealth may have made a good faith effort to comply with the discovery order, no meaningful discovery was possible within the time constraints imposed. Here, both the spirit and the letter of Rule 3A:14 were violated. Under the circumstances, the defendant was denied the right "to call for evidence in his favor," including "the right to prepare for trial . . . and to ascertain the truth." *Bobo* v. *Commonwealth*, 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948). These rights lie at the heart of a fair trial, and when they are abridged, an accused is denied due process.

Therefore, we will reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*