COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Petty
Argued at Chesapeake, Virginia


VERNON ANTONIO WILSON

MEMORANDUM OPINION* BY
v.        Record No. 1097-05-1          JUDGE ROBERT J. HUMPHREYS
                                        MAY 30, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

Curtis T. Brown for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
McDonnell, Attorney General; Leah A. Darron, Senior Assistant
Attorney General, on brief), for appellee.


Vernon Wilson ("Wilson") appeals his convictions, following a jury trial, of armed

burglary, attempted robbery, two counts of use of a firearm in the commission of a felony, and

two counts of conspiracy, in violation of Code §§ 18.2-90, 18.2-58, 18.2-53.1, and 18.2-22,

respectively.  On appeal, Wilson argues that the trial court erred in denying his motion to

suppress the results of a DNA test allegedly taken in violation of his Sixth Amendment rights,

that the evidence was insufficient to prove the necessary element of "entering" to support a

conviction for burglary, and that the trial court abused its discretion by finding the

Commonwealth did not violate discovery with regard to a witness' prior statement and criminal

record.  For the following reasons, we disagree and affirm the judgment of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

I.  <u>Whether Taking Wilson's DNA Without Counsel Present Violated Wilson's</u>
<u>Sixth Amendment Right To Counsel</u>

Wilson contends that the trial court erred in denying his motion to suppress DNA evidence derived from a DNA sample taken after Wilson had been indicted and had retained counsel.  Wilson argues that, by failing to notify his counsel that a DNA sample would be taken, Detective Powell violated the Sixth Amendment.  We disagree.

When reviewing a trial court's denial of a motion to suppress, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)).  However, the ultimate determination of whether the Sixth Amendment right to counsel exists during a pre-trial DNA test is a question of law we review *de novo.*  <u>See</u> <u>Muhammad v. Commonwealth</u>, 269 Va. 451, 479, 611 S.E.2d 537, 553 (2005) ("We review questions of law, and mixed questions of law and fact, utilizing a de novo standard of review.").

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . the assistance of counsel for his defense."  U.S. Const. amend. VI. Accordingly, following indictment or other formal charge, the accused is guaranteed the presence of counsel at trial, as well as at any stage of the prosecution, formal or informal, in court or out of court, where counsel's absence might derogate from the right to a fair trial.  <u>See,</u> <u>e.g.</u>, <u>Massiah v. United States</u>, 377 U.S. 201 (1964); <u>White v. Maryland</u>, 373 U.S. 59 (1963); <u>Hamilton v. Alabama</u>, 368 U.S. 52 (1961).

However, in <u>United States v. Wade</u>, 388 U.S. 218 (1967), the United States Supreme Court held that the right of an accused to have an attorney present during a critical stage of the prosecution did not extend to the gathering of evidence, such as the taking of fingerprints, blood samples, clothing, or hair.  <u>Id.</u> at 227.  The Wade Court reasoned that the denial of the right to

counsel during these "preparatory steps" does not violate the Sixth Amendment because "there is minimal risk that . . . absence [of counsel for the accused] at such stages might derogate from his right to a fair trial." Id. at 227-28; Law v. Danville, 212 Va. 702, 703, 187 S.E.2d 197, 198 (1972). Specifically, Wade acknowledged that,

> [The] [k]nowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts.

388 U.S. at 227-28.

In this case, Wilson argues that, because the DNA was "necessary for the prosecution to go forward," the presence of his counsel during the procedure was necessary to preserve his right to a fair trial. Because Wade controls our determination of this issue, we disagree.

The Commonwealth retrieved the DNA from Wilson to confirm a match that was already obtained from DNA samples in the databank profiles. In other words, the DNA was only necessary because the forensic scientist wanted an "actual sample" taken from the defendant to make sure the match was conclusive. Thus, when the law enforcement officers obtained the DNA sample, the Commonwealth was merely "gathering evidence"—akin to hair and blood samples—during a "preparatory step" that was not critical to Wilson's right to a "fair trial." Wade, 388 U.S. at 227-28; see also State v. Mata, 30 S.W.3d 486, 488-89 (Tex. Ct. App. 2000) (holding that, by asking a defendant for consent to obtain a DNA sample, the state did not violate the defendant's Sixth Amendment rights). Therefore, the DNA sample was not taken during a stage of the prosecution that prevented Wilson from "the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of

his own experts." Wade, 388 U.S. at 227-28. We hold that the failure to notify Wilson's counsel of the procedure did not violate Wilson's Sixth Amendment rights.

II. Whether The Evidence Was Sufficient To Establish Breaking And Entering

Wilson also contends that the evidence was insufficient to support his conviction of armed burglary, in violation of Code § 18.2-90. Specifically, he argues that the mere fact that the door to Hilkiah Lawe's ("Lawe") apartment had been kicked in was insufficient to prove that he "entered" the dwelling, as required by the statute. We disagree.

Code § 18.2-90 provides that,

> [i]f any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . with intent to commit murder, rape, robbery or arson . . . [and] if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

A "breaking" within the meaning of this statute occurs when an individual gains entry through the application of force, however slight it may be. Bright v. Commonwealth, 4 Va. App. 248, 252, 356 S.E.2d 443, 445 (1987). An entry, according to the common law, occurs when any part of the body enters a dwelling. Franklin v. Commonwealth, 28 Va. App. 719, 721-22, 508 S.E.2d 362, 363-64 (1998); see also William Blackstone, 4 Commentaries *227 ("As for the entry, any the least degree of it, with any part of the body, or with an instrument held in the hand, is sufficient as, to step over the threshold, to put a hand or a hook in at a window to draw out goods, or a pistol to demand one's money, are all of them burglarious entries.").

In this case, there is no dispute that kicking in a door is sufficient to constitute "breaking" under the statute. Wilson argues, however, that the facts in this case are insufficient to prove an "entering" under Code § 18.2-90.[1] We disagree.

---

[1] The Commonwealth also argues that "[f]iring a bullet through the open doorway of the residence, in order to gain entry, constitutes an entering." Because the jury could reasonably

- 4 -

Specifically, although Lawe testified that no one tried to "physically" come into his house — that is, fully step over the threshold — Lawe testified that his door "was kicked *in*"[2] and that it came "completely off the hinges." (Emphasis added). In this instance, we hold that a jury could infer beyond a reasonable doubt that when the door came off the hinges and fell into the apartment, the foot of the intruder, however briefly, entered the home as well.[3] Because the evidence inferentially established an "entry," we hold that the evidence was sufficient to support a conviction of armed burglary, in violation of Code § 18.2-90.

### III. Whether The Trial Court Abused Its Discretion By Finding That The Commonwealth Did Not Violate Discovery Orders With Regard To Witness Statements

Wilson argues that the trial court erred in admitting a prior inconsistent statement from one of Wilson's co-conspirators as well as that individual's criminal record, neither of which were provided to Wilson prior to trial.[4] Wilson contends that, by withholding exculpatory evidence, the Commonwealth violated both the trial court's discovery order and the requirements of due process. We hold that the record fails to establish reversible error.

---

infer from these facts that the foot of one of Wilson's co-conspirators entered the home when he kicked in the door, we need not consider this novel alternative theory of liability.

[2] Wilson's co-conspirator testified that he and another individual were designated to kick in the door, while Wilson remained armed and ready to counter any resistance that might come from within the apartment. Regardless, under the theory of accomplice liability, the actions of one principal are imputed to any other. See Code § 18.2-18. Thus, even if Wilson did not himself physically kick in the door, the actions of his accomplices are imputed to him.

[3] The jury was instructed that for purposes of burglary, "breaking . . . is the use of some force, however slight, to gain entry. The least entry with the whole or any part of the body, hand, or foot, or with any instrument or weapon introduced for the purpose of committing a felony is sufficient to complete the offense."

[4] Apparently, Parker made several different inconsistent statements. Prior to trial, Wilson's counsel had the transcript from the preliminary hearing, as well as two of the statements made by Parker. However, Wilson's counsel did not receive the third statement or Parker's criminal record until the morning of the day before Parker's cross-examination.

Although a defendant does not have a general constitutional right to discovery in a criminal case, Lowe v. Commonwealth, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), the Commonwealth is required to provide a defendant exculpatory evidence, including evidence affecting witness credibility, where the witness' reliability is likely "determinative of guilt or innocence." Giglio v. United States, 405 U.S. 150, 154 (1972); Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); see also Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986). "Evidence is exculpatory if it is favorable to the accused[,] and material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Knight v. Commonwealth, 18 Va. App. 207, 212, 443 S.E.2d 165, 168 (1994) (internal citations omitted).

On the other hand, the Commonwealth does not satisfy Brady and its progeny simply by disclosure. Lomax v. Commonwealth, 228 Va. 168, 172, 319 S.E.2d 763, 765 (1984); Gilchrist v. Commonwealth, 227 Va. 540, 547, 317 S.E.2d 784, 787 (1984). Timely disclosure is required, as it guarantees an accused sufficient time to investigate and evaluate the evidence in preparation for trial. Id. However, late disclosure does not take on constitutional proportions unless an accused is sufficiently prejudiced by the discovery violations as to deprive him of a fair trial. Moreno v. Commonwealth, 10 Va. App. 408, 417, 392 S.E.2d 836, 842 (1990).

In this case, Wilson argued that the Commonwealth failed to provide him with the prior statement and the criminal record in a timely manner. However, the trial court disagreed, stating,

> I believe that those items were turned over yesterday because I
> directed counsel to turn them over yesterday. If counsel didn't turn
> them over yesterday, Mr. Brown is very vigorous in asserting his
> client's rights and certainly would have made it a point to bring it

> to my attention that they were not turned over yesterday . . . . We'll
> take a ten-minute recess, and counsel can look over that.

Thus, the trial court implicitly found that, although Wilson did not receive the information before trial, Wilson received the exculpatory evidence in enough time to properly prepare to cross-examine the co-conspirator.[5] Moreover, even if the Commonwealth did not comply with the discovery order, Wilson's argument would fail because there is no evidence that Wilson was prejudiced by the alleged discovery violation. Thus, based on this record, we cannot say that the trial court erred in finding that the Commonwealth timely disclosed the prior inconsistent statement and the criminal record.

## CONCLUSION

We hold that, in this case, the post-indictment taking of a DNA sample without notifying counsel did not violate Wilson's Sixth Amendment right to counsel. We also hold that, because the door of Lawe's apartment was completely kicked in, the evidence was sufficient to support the reasonable inference that a foot, or part thereof, actually entered into the apartment, thereby satisfying the "entry" requirement. And, because the trial court has broad discretion to interpret its own orders, and because the trial court gave Wilson time to prepare for cross-examination, we find that the trial court did not abuse its discretion in finding the Commonwealth did not violate the pre-trial discovery order. Therefore, we affirm Wilson's convictions for armed burglary, attempted robbery, use of a firearm in the commission of a felony, and conspiracy.

Affirmed.

---

[5] The trial judge also granted Wilson a ten-minute recess to prepare for cross-examination. And as stated in Code § 19.2-265.4, when the Commonwealth fails to comply with discovery, "the court may order the Commonwealth to permit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or the court may enter such other order as it deems just under the circumstances."