# CIRCUIT COURT OF AUGUSTA COUNTY

Commonwealth of Virginia

v.

Jon Goble

April 16, 2009

Case Nos. CR08-383-00, CR09-48-00 (00-04)

By Judge Victor V. Ludwig

In light of the parties' respective motions and responsive memoranda, there are two overriding issues to be resolved prior to the trial of this case on May 21, 2009. Specifically, it must first be determined whether, and to what degree, the Court should order the Commonwealth to provide the defense a Bill of Particulars on the information requested by Mr. Cormier, counsel for the defendant, on February 3, 2009. Second, the Court must determine the appropriateness of the discovery requests submitted by the defense in its Motion for Discovery and Inspection and for Exculpatory Evidence of January 12, 2009, and, in connection with that, the requisite responsibilities of the Commonwealth regarding these matters.

## I. *Motion for Bill of Particulars*

In his Motion for Bill of Particulars, the Defendant has requested that the Court order the Commonwealth to furnish a written Bill of Particulars setting forth: (1) the date of each alleged sale, offer to sell, offer to purchase or purchase of any wild bird, animal, or fish, or body part thereof, in violation of Va. Code § 29.1-553 (each discrete event being a Transaction), as well as the specific type and/or body part of any such wild bird, animal, or fish involved in the alleged unlawful Transactions; (2) the dates, the specific amount of remuneration or consideration involved in

each alleged Transaction; and (3) the names of any and all parties to any alleged Transaction.

In response, the Commonwealth argues that, although it is within the Court's discretion to order a Bill of Particulars on these issues, no such order is necessary. *See Goins v. Commonwealth*, 251 Va. 442, 454 (1996), *citing Quesinberry v. Commonwealth*, 241 Va. 364, 372 (1991). Particularly, the Commonwealth seems to assert that the Defendant has had sufficient notice of the nature and character of the offense in order to defend his case. *See Wilder v. Commonwealth*, 217 Va. 145, 147 (1976).

The Court finds the case of *Simms v. Commonwealth*, 28 Va. App. 611 (1998), particularly relevant to this issue. In that case, the Court held:

> As long as an indictment sufficiently recites the elements of the offense, the Commonwealth is not required to include all evidence upon which it plans to rely to prove a particular offense, and an accused should not be permitted to expand the scope of discovery in a criminal case. However, the Commonwealth "should be required to fairly particularize the charge or charges [it] intends to prosecute, and not be permitted to go on a fishing expedition with a drag net. [An indictment or bill of particulars] should be directed at those charges as to which the prosecuting attorney expects to introduce supporting testimony." Whether to require the Commonwealth to file a bill of particulars rests within the discretion of the trial court.

*Id.* at 620 (internal citations omitted).

It is the Court's view that the defense has sufficient reason to request the date of each alleged Transaction, as well as the specific type and/ or body part of any such wild bird, animal, or fish allegedly involved in each Transaction. Va. Code § 29.1-553(A) proscribes the specified actions *"except as provided by law. . . ."* (Emphasis added.) This language renders the indictment against the Defendant somewhat ambiguous and gives rise to potential defenses if the Transaction is or could fall within the exception. Hence, the Defendant has good cause to request additional information from the Commonwealth that may clarify the charges against him. Accordingly, the Court orders the Commonwealth to furnish a written Bill of Particulars setting forth the information requested in the first paragraph of Mr. Cormier's motion.

The Court will not order the Commonwealth to provide additional information as to the remaining two requests set forth in the Defendant's motion. The Transactions are charged as felonies, and it is not generally mandated that the Commonwealth be more specific with respect to monetary amounts in felony indictments than that the alleged violation falls within the parameters of the felony requirements. With respect to the names of the

parties to the alleged Transactions, while the information could be helpful to the Defendant, it, like the monetary amounts, is not necessary for the Defendant fully to know the nature and character of the offenses. *Wilder v. Commonwealth, supra,* at 147.

## II. *Motion for Discovery and Inspection and for Exculpatory Evidence*

In addressing each of the Defendant's discovery requests, the Court will follow the numbered paragraphs corresponding to those set forth in the Defendant's Motion for Discovery and Inspection and for Exculpatory Evidence. Paragraphs 1 and 2 were explanatory information.

The Defendant's request for exculpatory evidence "within the knowledge, custody, and/or control of the Commonwealth's Attorney and/or his Assistants, as well as all law enforcement agencies which have participated in an investigation of this case and/or who may otherwise testify as a witness in this case" is a valid request, based on *Brady v. Maryland,* 373 U.S. 83 (1963).

Although *Brady* certainly does not provide any general right to discovery (as noted by the Commonwealth), the Defendant is entitled to the production of exculpatory evidence within the Commonwealth's knowledge and control. *See Brady,* 373 U.S. 83 at 87. Neither *Brady* nor any of its progeny supports the assertion that a Defendant must request exculpatory evidence with particularity. For that matter, neither does the case of *United States v. Billups,* 692 F.2d 320, 325-26 (4th Cir. 1982), and the Commonwealth's reference to it is inapposite.

As I am confident the Commonwealth is aware, *Brady* has evolved from its being *in utero* in *Mooney v. Holohan,* 294 U.S. 103 (1935), through *Brady* itself, to *United States v. Giglio,* 405 U.S. 150 (1972), to *United States v. Agurs,* 427 U.S. 97 (1976), and finally to *United States v. Bagley,* 473 U.S. 667 (1985).

In *Mooney,* the prosecution knowingly used perjured testimony. In *Brady,* the defense asked specifically for an accomplice's statement which, if not exculpatory at the guilt phase (because it likely was not admissible), might have been material at the sentencing phase. In *Giglio,* impeachment evidence was included as a category of required disclosure, somewhat in the nature of exculpatory information. In *Agurs,* there was, at best, only a general request for the exculpatory information. "In many cases, however, exculpatory information in the possession of the prosecutor may be unknown to defense counsel. In such a situation he may make no request at all, or possibly ask for 'all *Brady* material' or for 'anything exculpatory.' Such a request really gives the prosecutor no better notice than if no request is made. If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in

the hands of the prosecutor. But if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. Whether we focus on the desirability of a precise definition of the prosecutor's duty or on the potential harm to the defendant, we conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all. *The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "Brady material" has been made.*" *Id.* at 106-07 (emphasis added). The Court went on to make distinctions in the standard of materiality applicable to the *Mooney, Brady*, and *Agurs* situations. In *Mooney*, the standard was "any reasonable likelihood that the false testimony could have affected the judgment of the jury," "a strict standard of materiality, not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process." *Agurs* at 103. In *Brady*, "the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Id.* In *Agurs*, because of the nature of the general request (or lack of one entirely), the standard of materiality was the highest. To meet the standard, the omission by the prosecution had to be of "sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 108.

Without creating any new categories, this case clarified the requirements for a finding of materiality. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682. *Billups*, which was decided when the tests of materiality articulated in *Agurs* were still in flux, had nothing to do with creating a requirement that the defendant specifically request anything; rather, it addressed the standard of materiality to be imposed if a specific request were made.

In relation to the Defendant's fairly common *Brady* motion in this case, the Commonwealth also asserts: "[I]t is not up to the Commonwealth to decide what is exculpatory." (Commonwealth's Opposition to Defendant's Motions for Discovery and for Bill of Particulars, page 2.) Without attempting to decide that (or to make the case that it is dead wrong), even if it true, in *Agurs*, the Court noted:

> Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the

prudent prosecutor will resolve doubtful questions in favor of disclosure.

*Id.* at 108.

Our own Court has echoed that sentiment. In *Cherricks v. Commonwealth*, 11 Va. App. 96, 102 (1990), the Court held:

> When the Commonwealth elects to withhold exculpatory evidence on the ground that it is not material, it does so at its own peril and with the realization that the trial or appellate court may hold otherwise, thereby invalidating a conviction.

Accordingly, as provided below, the Court directs the Commonwealth to make available to the Defendant any and all exculpatory evidence within its knowledge and control.

As noted above, in *Giglio*, the Supreme Court discussed *Brady* as it applies to the disclosure of evidence affecting witness credibility and held that the prosecution was required to disclose evidence affecting the credibility of a key witness upon whose testimony the government's case was firmly rooted. *Giglio*, 405 U.S. 150, 154-55. The testimony of such a witness was sufficiently material under the requirements of *Brady* to make any nondisclosure regarding credibility a violation of the requirement to disclose. *Id.* at 154, *citing Brady*, 373 U.S. 83 at 87. Specifically, the Court found that the individual's "credibility as a witness was . . . an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." *Giglio* at 154-55.

On the basis of *Giglio*, the Court upholds the Defendant's motion on this request. Accordingly, as provided below, the Court directs the Commonwealth to make available to the Defendant all evidence adversely affecting the credibility of any witnesses whose testimony is material to the prosecution of Mr. Goble.

The Orange County Circuit Court case of *Commonwealth v. Long*, 2007 Va. Cir. LEXIS 65█ provides a more expansive look at *Brady* implications where material evidence directly related to witness credibility is at issue. Here, the prosecution used various methods of negotiating with a key witness, all of which were held to be exculpatory evidence and material to the defense.

First, the prosecution "made a promise and extended a benefit" to the witness in the form of advising her that she would not be charged with murder if she cooperated. *Id.* at *13. Second, the prosecution "communicated to [the witness] that some benefit would accrue to her" in relation to drug charges pending against her if she cooperated with the Commonwealth. Although

a "specific promise of a reduced sentence" was not necessarily involved, "there was 'always the implicit assumption' of some consideration from the Commonwealth in exchange for [the witness' testimony]." *Id.* at *15. Finally, the Commonwealth offered a plea agreement to the witness prior to trial. *Id.* The Court determined that, because the witness was "one of the most important" to testify against the defendant, the jury's perception of "her credibility was a critical issue in the case." The prosecution "failed to disclose exculpatory evidence that was directly related to [the witness'] credibility," and the "non-disclosed evidence was material." Therefore, the Court held that a *Brady* violation occurred and the verdict was ultimately set aside. *Id.* at *49.

In the case at bar, the Defendant seeks full disclosure by the Commonwealth of any and all promises of leniency or other consideration offered to any witness, as well as any and all threats or other coercion used against any witness, that bear upon the witness' credibility. Although *Long* is not binding upon this Court, its assessment of *Brady* is sound, and this Court will follow it in connection to these requests by the Defendant.

Accordingly, as provided below, the Court directs the Commonwealth to divulge all evidence of deals, promises, or threats made or offered by the Commonwealth to witnesses whose testimony against the Defendant is material to the prosecution's case.

The Defendant requests "any and all records and/or information revealing any prior felony convictions or misdemeanor convictions involving moral turpitude which may be attributed to each Commonwealth witness, including, but not limited to, any and all parties and potential witnesses who may be called upon to testify." The Commonwealth does not contest (as it cannot) its obligation to comply insofar as the request addresses witnesses, but it does not respond to any obligation with respect to "any and all parties and potential witnesses who may be called upon to testify." The Court is aware of no such obligation with respect to the latter category. However, the Commonwealth also takes the position that it will not provide the requisite information to the defense until the indefinite time of "before cross-examination." That ambiguous timeframe for disclosure (particularly if the Commonwealth means immediately before cross-examination) could be inconsistent with the laudable goals articulated in *Gilchrist v. Commonwealth*, 227 Va. 540 (1984). "[A]n accused has a constitutional right 'to call for evidence in his favor,' Va. Const., art. I, § 8, which includes the right to prepare for trial by procuring both testimonial and documentary evidence. *Cox v. Commonwealth*, 227 Va. 324, 328, 315 S.E.2d 228, 230 (1984). In order to prepare for trial, an accused and his *counsel must have sufficient time to investigate the case and to evaluate the evidence that is procured*." *Id.* at 545-46. *See also, Workman v. Commonwealth*, 272 Va. 633 (2006).

Accordingly, as provided below, the Court directs the Commonwealth to divulge all evidence of criminal convictions of its witnesses.

The Commonwealth acknowledges its obligation to comply with the Rule. However, the Defendant's request is broader than the requirement of the Rule.

Accordingly, as provided below, the Court directs the Commonwealth to divulge all evidence consistent with the Defendant's request insofar as it is required by Rule 3A:11(b)(1)(i).

As the Commonwealth argues, this request is simply too broad. The Defendant apparently requests to "inspect and/or copy or photograph all books, papers, documents," etc., that have been seized "or a record made thereof as evidence [against] the Defendant. . . ." The Rule permits the Defendant to inspect, copy, and photograph all such "designated" material in the possession of the Commonwealth "upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable." The only designation of material in the Defendant's motion "includes but is not limited to" a hard drive and a receipt book seized pursuant to a search warrant issued in connection with these cases. Under the circumstances, that may be sufficient to designate the hard drive and the receipt book, but those are the only items that the Defendant has designated.

The issue of proper designation aside, as the Commonwealth has argued, the Defendant cannot say simply that the materials (even the hard drive and the receipt book) are material to the preparation of his defense simply because the Commonwealth has the items and may use them. The Rule must mean more than that, and the Defense has not offered more. I do note, however, that there is no defined standard of materiality that I can find, and I also note that the hard drive and the receipt book are neither the work product of the Commonwealth nor the effort on its part, intellectual or otherwise, in developing its case. Indeed, they are items belonging to the Defendant which were seized as a result of a search warrant, and they are items of which the Defendant might have had (but apparently does not have) copies. It will be no particular burden on the Commonwealth to produce the items (or copies of them or make them available for copying) if the Defendant makes the proper showing.

Finally on this point, should Mr. Cormier seek to pursue this discovery with respect to the hard drive or the receipt book with evidence or a proffer that it is material to the Defendant's defense, I note that the Court will not, as I believe was suggested at the hearing of this matter, order that the original of either be delivered to him. Should the required standard be met, the limit of the discovery would be to permit the Defendant to inspect the originals and obtain copies of those portions material to the defense.

Assuming Request 9 to be of the same scope as Rule 3A:11(b)(2) (and no broader), other than the remark by the Commonwealth that

the 5th Amendment does not apply (recognizing, no doubt, that the due process provisions of 14th Amendment do), there does not appear to be any argument concerning Request 9.

There does not appear to be any argument concerning Request 10.

As noted in a footnote, counsel for the Defendant is entitled to a reasonable opportunity to examine discoverable material and prepare its use at trial. *See Gilchrist v. Commonwealth*, 227 Va. 540 (1984). Accordingly, the Court orders that the Commonwealth deliver or make available the information and items described in this opinion to Mr. Cormier not later than April 30, 2009, at noon.