COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Frank and Senior Judge Bray
Argued at Chesapeake, Virginia


ARTHUR LEE CARTER, JR.
                                            OPINION BY
v.    Record No. 0223-02-1          JUDGE ROBERT P. FRANK
                                         FEBRUARY 25, 2003
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                   Johnny E. Morrison, Judge

         LeeAnne Bierowicz (Bierowicz & Ringer, on
         brief), for appellant.

         Stephen R. McCullough, Assistant Attorney
         General (Jerry W. Kilgore, Attorney General,
         on brief), for appellee.


     Arthur Lee Carter, Jr. (appellant) was convicted by a jury of

voluntary manslaughter, in violation of Code § 18.2-35, unlawful

wounding, in violation of Code § 18.2-51, and unlawful discharge

of a firearm into an occupied dwelling, in violation of Code

§ 18.2-279.  On appeal, he contends the trial court erred in (1)

not granting him a continuance to explore further evidence, (2)

not allowing defense counsel to withdraw, and (3) not allowing a

witness to testify after she invoked her Fifth Amendment right

against self-incrimination.  For the reasons stated, we reverse.

                          BACKGROUND

     These offenses arose from a shooting on October 2, 1996,

outside 284 Wilson Parkway, Portsmouth, the home of Hazel Gatling.

Gatling, who was in her home, heard arguing outside her residence.

She looked out her front door and saw a lot of people, including

appellant, Jeffrey Hughes, and Shaline Holley, her next-door neighbor. Gatling testified Hughes and Holley had once lived together in the house next door. Holley was appellant's current girlfriend. Gatling saw appellant and Hughes "fussing and fighting and stuff." She could not recall whether Holley participated in the argument.

Gatling went upstairs to change her clothes. When she returned downstairs, she heard three shots. She then realized she was shot in her "upper leg, upper thigh." When she was observing the argument outside, Gatling did not see any weapons.

Gerard Waters testified he was on his grandmother's porch "lollygagging" and "hustling" at the time of the shooting. He observed Holley near two men who were arguing. Waters testified he was approximately forty to fifty feet away from the argument. Waters recognized the men as appellant and Hughes, having frequently seen both men in the area. According to Waters, the argument escalated into a physical fight. In the course of the altercation, appellant pulled out a gun and fired two or three shots in the direction of Hughes. Waters then saw Hughes fall to the ground.

The police found Hughes dead at the scene of the argument. He had been shot once in the head. The autopsy confirmed the cause of death was "a single close range gunshot wound to the left side of the head."

Immediately before trial on November 26, 2001, appellant's counsel moved for a brief continuance, stating:

> Some information has come to light to me
> this morning that clearly is exculpatory in
> nature, one that I was not privy to prior to

this morning, information that now that I'm
in possession of that information, I'm
unprepared to go forward.

    *      *      *      *      *      *      *

This case had originally been in the Public
Defender's Office and through the course of
their investigation, their investigator has
spoken to Ms. Holley.  I also had spoken to
Ms. Holley in my office since I was
appointed, since the P.D. withdrew and I was
appointed.  In those statements, and there
is no reason to disbelieve, she indicates
that she was present at the scene of the
alleged murder.  She was engaged in a
domestic dispute with [Hughes] at the time
of the shooting.  She, in fact, said that
she heard gunshots and was, in fact, shot
herself during the incident.  As such, we
had subpoenaed her for trial today.  In
speaking with her this morning before trial,
she's indicated – she confessed to the
murder.

    *      *      *      *      *      *      *

I would not be prepared to go forward on
behalf of my client who stands accused of
these charges without further investigation.
If she gets on the stand and takes the
Fifth, then I would need to have to withdraw
so I can testify as to her incriminating
statement that she made to me out in the
hall.

I would ask the Court for a brief
continuance, possibly to have an
investigator or an independent party
appointed so that we both could talk to Ms.
Holley and notes be taken.  I imagine since
the ideal is to produce justice and have the
right person at trial that the Commonwealth
would like the opportunity to speak with her
also.

The Commonwealth responded:

Well, Judge, we're ready for trial this
morning.  We've got our witnesses here.

> We're prepared to go forward, however as
> much as the thought of a continuance
> displeases me, it seems that we do have a
> duty to investigate.

While the Commonwealth did not oppose the continuance,[1] the trial court denied the motion. The court also denied counsel's motion to withdraw, noting she could renew the motion at a later time. The trial court then appointed counsel for Holley.

Excepting to the trial court's rulings, counsel argued:

> You're putting me in a position that I
> cannot fully represent my client to the best
> of my ability. My hands are tied. This
> information was given to me this morning.
> If I had known this information earlier, it
> would have affected my trial strategy. It
> would have affected my investigation of this
> case, and I'm not prepared to go forward.

After the Commonwealth rested, appellant attempted to call Holley as a witness in his behalf. Holley's attorney advised the court that Holley intended to exercise her Fifth Amendment privilege against self-incrimination. Although not under oath, Holley confirmed her intention to invoke her Fifth Amendment privilege.

Defense counsel sought to call Holley to the stand, question her before the jury, and obtain a question-by-question ruling from the trial court as to the validity of her assertion of the privilege. The Commonwealth objected. The trial court refused to allow appellant to put Holley on the stand, stating, "I'm not going to allow you to ask her in front of the jury about anything

---

[1] When the judge asked if the Commonwealth joined in the motion for a continuance, the prosecutor responded, "[W]e're still ready to go forward this morning."

about this case that maybe she exercises her right not to testify about.  I'm going to honor that."

Appellant's counsel then moved to withdraw, thereby permitting her testimony regarding Holley's statement that morning.  The trial court denied that motion as well.  Counsel also indicated the examination of Holley could be conducted outside the presence of the jury.  The trial court denied this request.  Appellant did receive leave from the court to make a subsequent proffer of the questions she intended to ask Holley.  Pursuant to the court's ruling, counsel made a post-trial proffer of the proposed questions and the anticipated answers.  The court considered the proffer timely made.

Initially, the proffer included the following questions and answers[2]:

---

[2] The proffered answers appear in brackets following the question.

Please state your name.  [Shaline Holley.]

Do you know Arthur Lee Carter, Jr.?  [Yes.]

What is your relationship with him, Arthur Lee Carter, Jr.?  [Boyfriend.]

What was your relationship with him in October of 1996?  [Family friend.]

Do you know Jeffrey Hughes?  [Yes.]

What was your relationship with him, Jeffrey Hughes, in October of 1996?  [Ex-boyfriend.]

Where did you live in October of 1996?  [283 Jeffrey Wilson.]

On October 2, 1996, did you have occasion to see Jeffrey Hughes?  [Yes.]

Where?  [In front of my apartment.]

Was there any interaction between you and Jeffrey Hughes?  [Yes.]

Describe the encounter.  [He approached me, he being Jeffrey Hughes, and wanted to talk about my kids.  He wanted to take them out. I said no.  He grabbed me.  I tried to walk away.  He followed and came to be physically violent with me.]

Were you injured during the incident?  [Yes, I was shot in the hand.]

Prior to the incident, did you see Arthur Lee Carter in Jeffrey Wilson [Housing Development]?  [No.]

During the incident, did you see Arthur Lee Carter in Jeffrey Wilson [Housing Development]?  [No.]

How did the encounter between you and Jeffrey Hughes end?  [He was shot.]

Appellant's counsel contended none of the responses to these questions would have incriminated Holley.  She noted Holley

previously had provided this information to the police, and the answers were corroborated "to some extent" by witnesses.

Appellant's counsel further proffered the following questions and answer:

Did you see who shot him?  [Yes.]

Who and why?[3]

Counsel conceded "then we would have been getting into the territory that any possible answers she would have given may have incriminated her."

## ANALYSIS

### A.  Motion to Continue

Appellant contends the trial court erred in not granting him a continuance when, the morning of the trial, Holley confessed to the murder.  As a corollary, appellant maintains, since Holley confessed to his counsel and then invoked her Fifth Amendment right to not incriminate herself, the trial court erred in not allowing counsel to withdraw.

The Supreme Court of Virginia has summarized the standard for appellate review of motions to continue:

> Whether to grant or deny a continuance of a trial is a matter that lies within the sound discretion of a trial court, and its ruling will not be reversed on appeal unless it is plainly wrong.  Lomax v. Commonwealth, 228 Va. 168, 172, 319 S.E.2d 763, 765 (1984); Parish v. Commonwealth, 206 Va. 627, 631-32, 145 S.E.2d 192, 195 (1965).  A court must exercise this discretion in a manner that

---

[3] Counsel did not proffer a specific response to this question.  However, based on counsel's representations prior to the trial, the court could infer Holley's response to this question would incriminate her.

does not prejudice a defendant's right to a fair and impartial trial or deprive him of his constitutional right "to call for evidence in his favor."  Va. Const. art. I, § 8; Lomax, 228 Va. at 172, 319 S.E.2d at 765; Gilchrist v. Commonwealth, 227 Va. 540, 545-46, 317 S.E.2d 784, 787 (1984).  A defendant's right to call for evidence in his favor guarantees him sufficient time to investigate and evaluate the evidence in preparation for trial.  Lomax, 228 Va. at 172, 319 S.E.2d at 765.  However, the need to investigate and evaluate the evidence and the prejudice allegedly resulting from the denial of a continuance cannot be based upon mere speculation.  Stewart v. Commonwealth, 10 Va. App. 563, 569, 394 S.E.2d 509, 513 (1990).  Thus, absent a showing of prejudice to a defendant by the denial of a continuance, an appellate court will not find that a trial court abused its discretion.

Cardwell v. Commonwealth, 248 Va. 501, 508-09, 450 S.E.2d 146, 151 (1994).  The Court has also noted, "An ideal system of laws would be one in which speedy justice is administered, but justice and not speed should be its paramount purpose."  Smith v. Commonwealth, 155 Va. 1111, 1117, 156 S.E. 577, 579 (1931).

When reviewing the denial of a motion to continue, we consider several factors.

In determining whether the trial court properly exercised its discretionary powers, we look to the diligence exercised by the moving party . . . . As well, we must determine if there is anything "in the circumstances to warrant the conclusion that the real purpose in moving for a continuance is to delay or evade trial and not to prepare for it."  Myers & Axtell, Receivers v. Trice, 86 Va. 835, 838, 11 S.E. 428, 429 (1890).

Cherricks v. Commonwealth, 11 Va. App. 96, 99-100, 396 S.E.2d 397, 399 (1990).  In the present case, the Commonwealth does not suggest the motion for a continuance was a tactic to delay or avoid trial or arose due to any failure of counsel to exercise diligence in obtaining Holley's statement.  In fact, the record indicates the motion was made in good faith.

Both an investigator in the Public Defender's office and appellant's counsel had interviewed Holley prior to the trial date.  While she admitted being at the scene of the shooting, Holley never admitted she shot Hughes.  The other witnesses never implicated Holley.  Only on the morning of the trial did Holley admit she shot Hughes.

The Commonwealth now argues appellant's counsel had sufficient time to investigate the case, even though this confession occurred just prior to trial.  The Commonwealth contends counsel knew that Holley was present at the scene of the shooting, that she had a domestic dispute with the victim, and that Holley was shot during the incident.  The Commonwealth contends counsel had a number of years to fully investigate Holley's role.[4]

The Commonwealth's argument is unpersuasive.  The information known to appellant's counsel did not suggest Holley was the shooter.  Indeed, when commenting on appellant's motion for a continuance, the prosecutor admitted its "duty to investigate" Holley's new statement confessing to the crime, suggesting the Commonwealth also did not suspect Holley prior to

_____

[4] The shooting occurred in October of 1996, and the trial began in November of 2001.

her confession on the day of trial.[5]  Holley's confession was unexpected by both the Commonwealth and appellant.

Appellant was prejudiced by not being able to further investigate this last-second confession and to re-evaluate trial strategy.  Appellant's counsel was not permitted time to re-interview the witnesses to the shooting (or even re-examine their prior statements) and to determine if their recollections of events buttressed or rebutted Holley's confession.  Counsel did not have time to investigate whether Holley had confessed to anyone else.  Counsel also could not approach the Commonwealth for further discussions regarding the charges.  Counsel did not have time to consider use of this confession in her trial strategy or the requirements for admission of this confession if Holley invoked her Fifth Amendment right.

Additionally, the confession was material.  Without peradventure, if the jury believed Holley's statement to counsel, then acquittal of appellant was probable.  Cf. Lacks v. Commonwealth, 182 Va. 318, 324, 28 S.E.2d 713, 715 (1944) (discussing the standard for granting a continuance in cases where a witness is unavailable).  Appellant's right to a fair trial and his right to produce evidence on his own behalf was compromised.  The trial court abused its discretion in denying appellant's motion for a continuance.

B.  Fifth Amendment Privilege

---

[5] Nothing in the record suggests the Commonwealth had exculpatory information implicating Holley in the shooting.  The Commonwealth provided no such information to appellant during discovery.

Second, appellant contends the trial court erred in not allowing counsel to examine Holley on the stand. Appellant claims, when a potential witness invokes the Fifth Amendment privilege against self-incrimination, the trial court is required to determine, question by question, whether each question has incriminating implications. Appellant argues the court should not allow the invocation of that privilege to terminate or prevent any further examination without such a determination.

Under the Fifth Amendment to the United States Constitution, a witness cannot be compelled to testify if that testimony would incriminate the witness. The Virginia Constitution also includes this protection. Va. Const., art. 1, § 8. However:

> [t]he fifth amendment does not provide a blanket right to refuse to answer any questions. Once a witness asserts his fifth amendment right, some investigative questioning must be allowed, for it is well settled that the "prosecutor need not accept at face value every asserted claim of privilege, no matter how frivolous." Namet v. United States, 373 U.S. 179, 188 (1963).

Cunningham v. Commonwealth, 2 Va. App. 358, 361-62, 344 S.E.2d 389, 391 (1986). For example, a witness may possess "nonprivileged information that could be used" in the case. Namet, 373 U.S. at 188 (allowing the government to ask some questions of witnesses who had invoked their privilege against self-incrimination).

Therefore, simple invocation of the right by a witness does not end the responsibilities of the trial court in resolving the

conflict between the protection of the witness and a defendant's
right to present evidence.

> The question whether the privilege is
> properly invoked is one for the trial court.
> As stated by the Supreme Court in Hoffman v.
> United States, 341 U.S. 479 (1951):
>
> "The witness is not exonerated from
> answering merely because he declares that in
> so doing he would incriminate himself -- his
> say-so does not of itself establish the
> hazard of incrimination.  It is for the
> court to say whether his silence is
> justified, . . . and to require him to
> answer if 'it clearly appears to the court
> that he is mistaken.'"
>
> Id. at 486 (citations omitted).

Cunningham, 2 Va. App. at 362, 344 S.E.2d at 391 (ellipsis in
original).  See also North Am. Mortgage Investors v. Pomponio,
219 Va. 914, 918, 252 S.E.2d 345, 348 (1979).

To determine whether the privilege is properly invoked, a
trial court need not demand explicit answers to all potential
questions.  As the United States Supreme Court explained:

> However, if the witness, upon interposing
> his claim, were required to prove the hazard
> in the sense in which a claim is usually
> required to be established in court, he
> would be compelled to surrender the very
> protection which the privilege is designed
> to guarantee.  To sustain the privilege, it
> need only be evident from the implications
> of the question, in the setting in which it
> is asked, that a responsive answer to the
> question or an explanation of why it cannot
> be answered might be dangerous because
> injurious disclosure could result.  The
> trial judge in appraising the claim "must be
> governed as much by his personal perception
> of the peculiarities of the case as by the
> facts actually in evidence."  See Taft, J.,

in Ex parte Irvine, 74 F. 954, 960 (C.C.S.D. Ohio, 1896).

Hoffman, 341 U.S. at 486–87.  The Supreme Court in Hoffman found, "In this setting it was not 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate."  Id. at 488 (quoting Temple v. Commonwealth, 75 Va. 892, 898 (1881)) (emphasis in original).

Citing Temple, the Supreme Court of Virginia agreed with the "general proposition" that a defendant "should have been permitted to pose individual questions to the witness and if [the witness] asserted his Fifth Amendment privilege against answering any such questions, then the court could have determined whether the answers thereto would have been incriminating."  Worrells v. Commonwealth, 212 Va. 270, 271-72, 183 S.E.2d 723, 724 (1971).  While affirming the trial court because Worrells did not proffer the individual questions, id. at 272, 183 S.E.2d at 724,[6] the Supreme Court clearly opined that a witness who claims the privilege must answer non-incriminating questions.

Therefore, a witness cannot determine himself if he will be put on the stand, sworn, and examined.  The Fifth Amendment privilege relates only to incriminating statements, not benign

---

[6] The Court found, "The defendant did not proffer to the trial court the individual questions he desired to pose to the witness.  We are unable to determine, therefore, whether such questions would have been relevant and, if so, whether the witness should have been required to answer them."  Worrells, 212 Va. at 272, 183 S.E.2d at 724.

information and not the entirety of a witness' testimony.  The trial court has the duty to protect the witness' Fifth Amendment rights, but at the same time, is obligated to "consider the proposed question and its incriminating implications."  Gosling v. Commonwealth, 14 Va. App. 158, 165, 415 S.E.2d 870, 874 (1992).

The trial court must determine which of the witness' responses may be incriminating and which are not.  The court could proceed by means of an examination of a witness outside the presence of the jury.  However, as noted in Hoffman, the witness should not be forced to answer, even in this circumstance, once it appears the question will elicit incriminating information.  Alternatively, the trial court could proceed by way of a proffer or any other method that enables the judge to determine the effect of the examination.  This determination, however, must remain within the realm of the trial court, not the witness.

In the instant case, appellant's counsel indicated Holley had relevant testimony that was not self-incriminating.  Counsel indicated Holley had given statements to the police claiming appellant was not present when Hughes was shot.  Such a statement, if given as testimony by Holley, was relevant and material to appellant's defense, independent of her confession. We do not know what Holley's response would have been, as she was not permitted to take the stand, but appellant proffered her answers to various questions, including a statement that

appellant was not at the scene.[7]  The trial court never ruled on whether this response was incriminating.[8]

The Commonwealth argues the trial court correctly declined to allow Holley to testify because any answers she gave would

---

[7] The Commonwealth did not object to the proffer.

[8] Although it accepted the proffer, the trial court ruled on appellant's request for permission to question Holley prior to introduction of the proffer.  In fact, given the continuance was not granted, appellant had no time to prepare a proffer when he made the request to question Holley.  The court did know, however, that Holley had confessed to the shooting in contradiction of her previous statements and that her previous statements contained exculpatory information concerning appellant.

have placed her at the center of the crime.  The Commonwealth correctly cites Gosling for the proposition that the court must find "'it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer cannot possibly have such tendency [to incriminate].'"  14 Va. App. at 165, 415 S.E.2d at 874 (quoting Temple, 75 Va. at 898) (emphasis omitted).  However, this proposition presupposes the trial court considered whether the response or potential response to a particular question would tend to incriminate the witness, as the trial court did in Gosling, 14 Va. App. at 166, 415 S.E.2d at 874.

We do not suggest the trial court must have a witness who invokes the privilege against self-incrimination take the stand under all circumstances.  We simply underscore Gosling's mandate that the court "consider the proposed question[s] and [their] incriminating implications."  Id. at 165, 415 S.E.2d at 874.  On remand, if Holley again invokes her privilege, the trial court must abide by the precepts in Gosling.  The court cannot simply rule that one incriminating question taints the entire examination without considering the remaining questions.

### C.  Motion to Withdraw

Finally, appellant argues the trial court erred in not allowing counsel to withdraw.  Appellant contends counsel had to withdraw in order to enable her to testify regarding Holley's confession.  Appellant relies, in part, on Rule 3.7(a) of the Virginia Rules of Professional Conduct, which states, in part, "A

lawyer shall not act as an advocate in an adversarial proceeding in which a lawyer is likely to be a necessary witness . . . ." The Commonwealth maintains, since counsel could not testify as to Holley's "bare confession," the trial court did not err.

Because we find the trial court erred in denying a continuance, we do not address whether the court should have relieved appellant's counsel and allowed her to testify as to the third-party confession.  However, if the Commonwealth chooses to retry appellant and the same issue arises, then the trial court must determine, based on the facts and circumstances presented at the new trial, whether trial counsel is a potential witness and whether that potential creates a conflict in her representation. See Davis v. Commonwealth, 21 Va. App. 587, 593, 466 S.E.2d 741, 743-44 (1996).

For example, if Holley continues to assert her Fifth Amendment right and if information establishes that her confession is reliable, then counsel's testimony may be admissible under the declaration against penal interest exception to the hearsay rule.  See Randolph v. Commonwealth, 24 Va. App. 345, 353-57, 482 S.E.2d 101, 104-06 (1997) (discussing declarations against penal interest).  Alternatively, if Holley takes the stand and testifies in contradiction of her confession, appellant's counsel may be called to testify as an impeachment witness.  As we are reversing the convictions on other grounds, we need not resolve these issues here.

We find the trial court erred in denying appellant's motion for a continuance.  For this reason, we reverse the judgment of

the trial court and remand for further proceedings consistent with this opinion, if the Commonwealth be so inclined.

<u>Reversed and remanded.</u>