COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Felton and McClanahan
Argued at Alexandria, Virginia


NHI AL TRAN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2357-03-4                      JUDGE WALTER S. FELTON, JR.
                                                    SEPTEMBER 14, 2004
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              R. Terrence Ney, Judge

        Mark J. Yeager (Law Offices of Mark J. Yeager, P.C., on briefs), for
        appellant.

        Stephen R. McCullough, Assistant Attorney General (Jerry W.
        Kilgore, Attorney General, on brief), for appellee.


        Nhi Al Tran (appellant) was convicted by a jury on three counts of check forgery in

violation of Code § 18.2-172.  Appellant contends that the trial court erred in (1) determining that

Giang Dong was not available as a defense witness because he did not waive his Fifth Amendment

privilege against self-incrimination; and (2) in failing to admit into evidence defense exhibit 3, a

typewritten letter prepared by appellant and bearing Dong's signature, as a declaration against penal

interest exception to the hearsay rule.  Finding no error, we affirm the convictions.

                                      BACKGROUND

        Applying familiar principles of law, we review the evidence and all reasonable inferences

fairly deducible therefrom in the light most favorable to the Commonwealth, the party prevailing

below.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence established that Scott Nguyen (Nguyen), while employed as a teller at First Virginia Bank, found a driver's license left behind by Troy Dow, a bank customer. Nguyen gave Dow's driver's license and bank account number to Giang Dong as part of a fraudulent check-cashing scheme. Dong stole checks from his brother Son Dong, and wrote the checks to Troy Dow as payee.

On the morning of March 25, 2002, appellant met Giang Dong at Eden Center, a shopping mall, and asked about money that Dong owed him. Dong informed appellant that he had some checks from his brother, and appellant agreed to drive Dong to the bank to cash them. That morning, Dong and appellant drove to six different First Virginia Bank branches in northern Virginia over a period of ninety minutes. The transactions at three of the branch banks during that period are the subject of these convictions. The forged checks were presented to tellers at the various First Virginia Bank branches. When the tellers requested identification to cash the checks, Dow's driver's license was presented. At two of the branch banks when appellant handed the check to the teller, the teller returned it to appellant and told him "you need the account number." Appellant then wrote the number Dong read to him on the check. At the final branch bank, a teller refused to cash the check. At that point, the two men returned to Eden Center. There, Dong gave appellant $1,000 from the cash received from the forged checks.

On May 21, 2002, Detective James Reid of the Fairfax County Police Department questioned appellant regarding the forged checks. At trial, Detective Reid testified that appellant told him that he was aware that the forged checks were stolen by Giang Dong from his brother Son Dong. Reid also testified that appellant disclosed that he knew Scott Nguyen provided Troy Dow's driver's license and bank account number that he and Dong used to cash the checks and that it was Nguyen who suggested that they use the drive-through windows to cash the forged checks because there were no video cameras there. When appellant testified at trial, he denied

telling Reid that he knew the checks were stolen, denied that Nguyen advised him to use the drive-through windows, and denied that he wrote anything on the front of the checks.

At the conclusion of the Commonwealth's case-in-chief, appellant called Giang Dong to testify as a defense witness. The Commonwealth objected to Dong being called based on representations from Dong's counsel that Dong would assert his Fifth Amendment privilege. The trial court permitted appellant to examine Dong out of the jury's presence to determine whether there were questions appellant could ask Dong without infringing on Dong's Fifth Amendment privilege, and to determine whether Dong would assert the privilege. When the first question was asked by appellant, Dong attempted to invoke his Fifth Amendment privilege. The trial court thereafter directed Dong to answer specific questions asked by appellant. Dong's answers were incriminating to him. The trial court concluded that Dong intended to avail himself of the privilege and that his language barrier prevented him from fully understanding the trial court's directives. It ruled that Dong had not waived his Fifth Amendment privilege and, therefore, was unavailable to be called as a witness by appellant.

Once the trial court determined Dong to be unavailable as a witness, appellant sought to introduce into evidence an undated typewritten letter prepared by him and bearing Dong's signature. Dong signed only his first name at the bottom of the letter. A portion of the writing stated Dong asked appellant to drive him "to the bank to cash some checks for him" and that "Scott gave me information and showed me how to get the money." The writing included a statement that appellant "didn't know anything about this." The trial court excluded the letter, finding that it was inadmissible hearsay and was not admissible as a declaration against penal interest exception to the hearsay rule. It further ruled that it was not admissible because it was inappropriate opinion testimony.

ANALYSIS

A. FIFTH AMENDMENT PRIVILEGE – UNAVAILABILITY OF WITNESS

Appellant contends that the trial court erred in ruling that Dong had not waived his Fifth Amendment privilege against self-incrimination and in not allowing him to call Dong as a defense witness. He argues that Dong waived his privilege when he provided incriminating evidence while questioned under oath and in the presence of his attorney, but outside the jury's presence. Specifically appellant argues that because Dong's testimony was given under oath, and because Dong did not invoke his privilege before he answered appellant's specific questions, Dong waived his privilege as to his responsive answers.

Appellant argues that the trial court's ruling that Dong had not waived his Fifth Amendment privilege, resulting in Dong becoming unavailable as a witness, prevented him from "obtaining witnesses in his favor" under the Sixth Amendment.[1] Appellant correctly asserts that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). "A criminal defendant's right to compel testimony is fundamental to sixth and fourteenth amendment due process rights." Gaskins v. McKellar, 916 F.2d 941, 950 (4th Cir. 1990). But, an accused does not have the right to compel a witness to testify if the witness elects to invoke his privilege against self-incrimination. See Dearing v. Commonwealth, 259 Va. 117, 122, 524 S.E.2d 121, 124 (2000). Both the United States and Virginia Constitutions protect an accused from being compelled to give self-incriminating testimony. U.S. Const. amend. V; Va. Const. art. I, § 8. The privilege against self-incrimination "was framed for the protection of the citizen, and

---

[1] The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, . . . ." U.S. Const. amend. IV. See also Va. Const. art. I, § 8 (guaranteeing that "in criminal prosecutions a man hath a right . . . to call for evidence in his favor").

announced great principles of individual right, to be secured to the people of Virginia and their posterity forever." Cullen v. Commonwealth, 65 Va. (24 Gratt.) 624, 628 (1873).

On the other hand, "the fifth amendment does not provide a blanket right to refuse to answer any questions. Once a witness asserts his fifth amendment right, some investigative questioning must be allowed." Carter v. Commonwealth, 39 Va. App. 735, 747, 576 S.E.2d 773, 780 (2003).[2] "[A] witness cannot determine himself if he will be put on the stand, sworn, and examined. The Fifth Amendment privilege relates only to incriminating statements, not benign information and not the entirety of a witness' testimony." Id. at 749, 576 S.E.2d at 780. The privilege protects an individual only "'against being incriminated by his own compelled testimonial communications.'" Hartigan v. Commonwealth, 31 Va. App. 243, 249, 522 S.E.2d 406, 409 (1999) (quoting Fisher v. United States, 425 U.S. 391, 409 (1976)).

The trial court determined that Dong had not waived his Fifth Amendment privilege against self-incrimination. Whether a testifying witness has waived his privilege against self-incrimination is a question that must be determined "'from a careful consideration of all the circumstances in the case.'" Carter v. Commonwealth, 39 Va. App. 735, 750, 576 S.E.2d 773, 780 (2003) (quoting Gosling v. Commonwealth, 14 Va. App. 158, 165, 415 S.E.2d 870, 874 (1992)); see Ronald J. Bacigal, Virginia Criminal Procedure § 7-12, at 262 (5th ed. 2004). "The trial court must determine which of the witness' responses may be incriminating and which are not." Carter, 39 Va. App. at 749, 576 S.E.2d at 780. When a witness invokes his privilege, the

---

[2] Giang Dong was arrested and charged for his alleged involvement in the fraudulent check-cashing scheme. Due to a scheduling problem, the charges against him were *nol prossed* and had not been revived at the time of appellant's trial, though the Commonwealth asserted that Dong would be charged again. He was treated as an uncharged witness rather than a codefendant by the court. See Dearing, 259 Va. at 122, 524 S.E.2d at 124 (holding that the defendant had no right to compel codefendant to testify if codefendant elected to invoke his right against self-incrimination); Worrells v. Commonwealth, 212 Va. 270, 183 S.E.2d 723 (1971). See generally, Ronald J. Bacigal, Virginia Criminal Procedure § 7-12 (5th ed. 2004).

trial court must still determine which of the questions the witness may be compelled to answer.[3]

Id. In making such a determination, the trial court "must indulge every reasonable presumption against" waiver of fundamental constitutional rights. Grogg v. Commonwealth, 6 Va. App. 598, 611, 371 S.E.2d 549, 556 (1988). We give the factual findings of the trial court "in making [this] admissibility determination . . . the same weight as . . . a finding of fact by the jury." Rabeiro v. Commonwealth, 10 Va. App. 61, 64, 389 S.E.2d 731, 733 (1990).

In concluding that Dong had not waived his privilege against self-incrimination, the trial court acknowledged:

> It's a very close question as to whether or not he waived that right by answering some of those questions. But I'm not sure if the witness understood exactly. I'm not sure that when he was directed by the court to answer one question he did not think that he was supposed to answer the rest.

The trial court found that Dong "attempted to exercise his rights, and I think through some confusion, perhaps caused by myself, he ended up answering some questions. I think he did so unknowingly, inadvertently and perhaps some of that was because of the language."

The record reflects that Dong required an interpreter to understand appellant's questions. When appellant asked Dong, "Did you tell Mr. Tran that the checks that you had were stolen?" Dong stammered briefly and then fell silent. At that point, the interpreter intervened and asked if the trial court wanted her to translate. When she translated the question, Dong immediately responded, "I would like to take my Fifth Amendment." The trial court agreed that this assertion of the privilege was proper as to the question asked. Then appellant asked Dong: "You were accused of committing crimes based on these check cashing incidents, correct?" Again, Dong

---

[3] The trial court may enforce its order for a witness to testify through its contempt powers. See Sapp v. Commonwealth, 263 Va. 415, 425, 559 S.E.2d 645, 650 (2002). See also Code § 18.2-456(5) (providing that power to punish summarily for contempt where a witness disobeys or resists a lawful order of the trial court).

- 6 -

invoked the Fifth Amendment, but appellant challenged his use of the privilege. The Commonwealth agreed that the particular question did not require an incriminating response, and the trial court directed Dong to answer. At that point, Dong's attorney asked to speak with his client. The trial court denied his request. It is unclear from the record whether Dong understood the distinction between questions he was required to answer and those to which he could invoke the privilege.

After the trial court directed him to answer the question, Dong proceeded to respond to all of counsel's questions. He testified that he signed his name at the bottom of the typewritten letter composed by appellant and that he remembered where he was when he signed it. Appellant contends that these responses by Dong amounted to a waiver of his privilege against self-incrimination. We disagree.

Dong's testimony to that point simply authenticated the typewritten letter handed to him by appellant.[4] The trial court prompted counsel to press Dong to either assert the privilege or to waive it:

> TRIAL COURT: I thought you were going to ask one more question, [counsel], to see what happens. Maybe you had better do that.
>
> COUNSEL: Before you signed that letter did you have a chance to read it?
>
> DONG: I have a question. Do I have to answer that question?
>
> TRIAL COURT: You have to answer his questions.

---

[4] As a general rule, no writing may be admitted into evidence unless and until it has been "authenticated," or shown that it is what it purports to be. Proctor v. Commonwealth, 14 Va. App. 937, 938, 419 S.E.2d 867, 868 (1992). See also 2 McCormick on Evidence § 218 (5th ed. 1999). However, "authenticating a document . . . does not resolve other obstacles that may prevent the evidence from being admissible." Hall v. Commonwealth, 15 Va. App. 170, 175, 421 S.E.2d 887, 890 (1992). Authentication only establishes the genuineness of the item. Mere proof of authenticity does not necessarily resolve the question of admissibility. See 2 McCormick on Evidence § 218, at 36.

DONG:  I didn't write this letter.

COUNSEL:  Correct.  But did you read it before you signed it?

DONG:  Yes, I did.

Appellant asserts that Dong adopted the contents of the letter by acknowledging that he read it before signing his name.  He argues that because portions of the letter were incriminating to Dong, he waived his Fifth Amendment privilege when he responded to the above questions.  The record, however, clearly demonstrates that the court compelled Dong to respond to the question that he read the typewritten letter before he signed his name to it.  Once the trial court declared Dong unavailable as a witness, appellant offered the letter, clearly hearsay, arguing that it was a declaration by Dong against his penal interest and therefore admissible as an exception to the hearsay rule.

It is unclear from the record whether Dong understood that when he was directed by the trial court to answer questions, that he was required to answer all questions he was asked, including any that might incriminate him.  The trial court considered these circumstances, and determined that Dong did not waive his privilege against self-incrimination.  We agree.

Like Dong, the witness in Smith v. United States, 337 U.S. 137 (1949), invoked his Fifth Amendment privilege immediately when called to testify.  In Smith, counsel believed that the witness answered an incriminating question voluntarily during his testimony.  When counsel asked the witness whether he claimed privilege as to that question, the witness responded, "No."  Counsel then proceeded to have the witness restate the entire substance of his testimony.  Id. at 149-51.  The Court held that the witness had not waived his privilege:  "[w]aiver of constitutional rights, . . . is not lightly to be inferred.  A witness cannot properly be held after claim[ing the Fifth] to have waived his privilege . . . upon vague and uncertain evidence."  Id. at 150.  The Court, persuaded that the witness "relied from the beginning of his examination upon

his privilege," reasoned that "[i]n view of the specific claim of privilege [earlier in the witness' testimony], it seems unlikely that [the witness] would waive the privilege and testify, voluntarily." Id. at 150-51.

Appellant cites Minnesota v. Murphy, 465 U.S. 420 (1984), for the general principle that a witness who fails to claim the Fifth Amendment privilege loses the benefit of it, even where the witness has not knowingly and intelligently waived the privilege. Id. at 428 (citing Garner v. United States, 424 U.S. 648, 654 (1976)). The Court held in Murphy, however, that there can be no inadvertent waiver where the individual is effectively denied the free choice to refuse to answer. See id. at 429 (citing Garner, 424 U.S. at 657). Here, Dong informed the court that he wanted to invoke his privilege and that he did not want to answer appellant's questions. The trial court, aware of Dong's language difficulties, nevertheless directed him to answer questions which were, in fact, incriminating to him.

In Murphy, the defendant admitted to his probation officer that he had committed a rape and murder unrelated to the conviction for which he was on probation. He never invoked the Fifth Amendment at any point during the meeting with his probation officer. Here, Dong was aware of and undoubtedly intended to rely on his Fifth Amendment privilege.

Unlike the witness in Murphy, Dong attempted to assert his privilege against self-incrimination numerous times during his examination. Considering the totality of the circumstances surrounding his testimony, Dong cannot reasonably be categorized as a witness "who failed to claim the privilege." Id. at 427.

Appellant correctly states that when a witness voluntarily discloses an incriminating fact, he may be compelled to testify to the details surrounding that fact. See Johnson v. Riddle, 222 Va. 428, 431, 281 S.E.2d 843, 846 (1941). "Thus, if the witness himself elects to waive his privilege, as he may doubtless do, since the privilege is for his protection and not for that of other

parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure." Brown v. Walker, 161 U.S. 591, 597 (1896). On the other hand, there is a marked distinction in a witness voluntarily disclosing incriminating information and in a witness being compelled to disclose such information by the trial court. Where a trial court directs disclosure of incriminating information, as it did here, there has been no waiver by the witness of his Fifth Amendment privilege, but rather a compelled disclosure of incriminating information. Absent a waiver of the privilege by the witness, further examination into the details of the incriminating information is not permissible. Carter, 39 Va. App. at 747, 576 S.E.2d at 779.

Finally, in support of his contention that Dong waived his Fifth Amendment privilege, appellant argues that Dong's attorney did not object when Dong incriminated himself. However, the record reflects that when Dong's attorney asked to speak to him while he was testifying, the trial court refused to allow him to do so. Moreover, the privilege against self-incrimination is a "highly personal" privilege and only the witness may assert it. Rees v. Commonwealth, 203 Va. 850, 867, 127 S.E.2d 406, 418 (1962) (citing Powell v. Commonwealth, 167 Va. 558, 576-77, 189 S.E. 433, 441 (1937)). "If the witness wishes to answer, no one can object, and by the same token no one can waive for him this right." Powell, 167 Va. at 577, 189 S.E. at 441.

B. DECLARATION AGAINST PENAL INTEREST

Appellant contends that the trial court erred in failing to admit the typewritten letter[5] he prepared and which bore Dong's signature. Appellant asserts the letter was exculpatory because

---

[5] The typed letter composed by appellant which Giang Dong signed states:

> To Whom It May Concern;
>
> My name is Giang Dong, am twenty years old. I've been in this country for 5 years. I met Nhi Ai Tran 5 years ago, back then when we were in the same ESL class. He graduated from Bell

it shows he was not aware of the check forgery scheme when the checks were cashed. He argues that because the trial court had declared Dong to be unavailable as a witness, the letter, otherwise inadmissible hearsay, should have been admitted under the declaration against interest exception to the hearsay rule. Specifically, he argues that the letter was a declaration against Dong's penal

---

Multicultural High School, and moved to Virginia for college a few days before his graduation. I moved to Maryland a week after Nhi Tran. I attended to Montgomery Community College a year after Tran. We were close friends in Boy Scout because he was the Senior Patrol leader of troop 494.

Time passed by, I went to Eden Center, a Vietnamese shopping center and came over George Mason University to visit friends. I met Nhi Tran there. In fact, he gave me some money so I could chill with my girlfriends or chill, or whenever I needed. Sometime, he gave me his credit card to cash money too. And, I borrowed some money from him.

Like a few months ago, I reunited with Tran again at Eden Center. He asked me for the money that I owned him. At that time, I didn't have any money to pay him back. So in order to pay him back, I asked him for a favor, which drove me to the Banks to cash some checks for me. This time, I didn't ask Nhi to use his bank account, "Oh, no! You don't have cash through your bank account, Nhi. I have my account here with me," I told him. Before that, whenever I had money order or my friends asked me to cash the check or money order, I always asked Nhi to cash for me because he got account with First Virginia Bank.

After I got the money, I gave Nhi $1000.00, and another guy who gave me the account information an amount of the money. (That guy name Scott, he gave me information and showed me how to get the money, after finished we shared the money).

A few months later, I heard from people that Nhi got locked up with some bank thingy. Today, I am writing this letter to let and tell everyone know that Nhi Tran didn't know anything about this. I just asked him for a ride so I could cash some money to be able to pay him back. The reason that I am telling this because I don't want the judge put Nhi Tran in jail while he's innocent. Thank you very much.

Once again thank you very much.

Sincerely, Giang [name handwritten]

interest and that the jury should have been permitted to consider the portions of the letter asserting that appellant was not aware of the check forgery scheme when the checks were cashed.

"The admissibility of evidence is within the broad discretion of the trial court . . . ." Pavlick v. Commonwealth, 25 Va. App. 538, 543, 489 S.E.2d 720, 722 (1997) (citing Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).

> Whether an extrajudicial statement is hearsay depends upon the purpose for which it is offered and received into evidence. If the statement is received to prove the truth of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay.

Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992) (citing Evans-Smith v. Commonwealth, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987)). Generally, out-of-court statements by third parties are inadmissible hearsay because the declarant is not subject to cross-examination to determine his credibility or trustworthiness of the statement. See Claud v. Commonwealth, 217 Va. 794, 796-97, 232 S.E.2d 790, 792 (1977).

"The admissibility of a statement made by an unavailable witness that is against his or her penal interests 'is a "firmly rooted" exception to the hearsay rule in Virginia.'" Pitt v. Commonwealth, 28 Va. App. 730, 741, 508 S.E.2d 891, 897 (1999) (quoting Raia v. Commonwealth, 23 Va. App. 546, 552, 478 S.E.2d 328, 331 (1996)); see also Ellison v. Commonwealth, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978); Hines v. Commonwealth, 136 Va. 728, 747, 117 S.E. 843, 848 (1923). "Underlying this exception is the presumption that individuals have a strong interest in protecting themselves and thus do not often make statements that expose themselves to criminal liability unless those statements are true." Schmitt v. Commonwealth, 262 Va. 127, 144, 547 S.E.2d 186, 198 (2001) (citing Newberry v. Commonwealth, 191 Va. 445, 461, 61 S.E.2d 318, 326 (1950)). "When the declarant has made

an incriminating statement that is contrary to his self-interest, this 'element of self-interest' functions as 'a reasonably safe substitute for the oath and cross-examination as a guarantee of truth.'" Id. (quoting Newberry, 191 Va. at 461, 61 S.E.2d at 326).

A party who relies upon the exception to an exclusionary rule of evidence, here hearsay, bears the burden of establishing admissibility. See Clark v. Commonwealth, 3 Va. App. 474, 480, 351 S.E.2d 42, 45 (1986) (citing Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984)). Under the declaration against interest exception to the hearsay rule,

> an out-of-court statement is admissible to prove the truth of the matters asserted therein if three requirements are met: (1) the declarant is unavailable to testify at trial; (2) the statement is against the declarant's interest at the time it was made; and (3) the declarant is subjectively aware at the time the statement is made that it is against his or her interest to make it.

Rankins v. Commonwealth, 31 Va. App. 352, 362, 523 S.E.2d 524, 529 (2000).

The trial court determined that Dong had not waived his Fifth Amendment privilege and was therefore unavailable as a witness. Newberry, 191 Va. at 462, 61 S.E.2d at 326. Only portions of the typewritten letter, authored by appellant, contained incriminating evidence against Dong, namely by placing Dong in the car when the forged checks were cashed and by connecting Dong to Scott Nguyen and the check-cashing scheme. However, the majority of the letter merely establishes that Dong and appellant were acquaintances through ESL (English as a Second Language) class, Boy Scouts, and the Vietnamese community and that Dong owed appellant money.[6]

In order for an otherwise inadmissible hearsay declaration against interest to be admissible, the proponent of the evidence must show that "the declarant is subjectively aware at the time the statement is made that it is against his or her interest to make it." Rankins, 31

---

[6] Interestingly, the letter contains exact quotes, set off by quotation marks, attributed to Dong.

Va. App. at 362, 523 S.E.2d at 529. A statement is against a declarant's interest if it is against

his pecuniary, proprietary, or penal interest. Hines, 136 Va. at 744, 117 S.E. at 847.

> To be considered as being against the declarant's penal interest, it
> is not necessary that the statement be sufficient on its own to
> charge and convict the declarant of the crimes detailed therein.
> Rather, the statement's admissibility is based upon the subjective
> belief of the declarant that he is making admissions against his
> penal interest and upon other evidence tending to show that the
> statement is reliable.

Lilly v. Commonwealth, 255 Va. 558, 573, 499 S.E.2d 522, 533 (1998) (citing Chandler v.

Commonwealth, 249 Va. 270, 278-79, 455 S.E.2d 219, 224-25 (1995) (holding evidence proved

declarant knew statement was against her penal interest because she expressly told police that

"she thought she could be an accessory to the crimes")), rev'd on other grounds, 527 U.S. 116

(1999). See also Randolph v. Commonwealth, 24 Va. App. 345, 356-57, 482 S.E.2d 101, 106

(1997) (holding evidence proved declarant knew statement was against her penal interest because

she admitted, while under arrest for credit card theft, that she and defendant went to the airport

"to steal . . . to pick pockets"); Raia, 23 Va. App. at 549, 478 S.E.2d at 330 (holding evidence

proved declarant realized the seriousness of her statements against her interest when she

admitted to police that she and defendant had planned to lure the victim to a parking area where

defendant would do "whatever was necessary, including shooting [victim]," to "remove [victim]

from her life" and that the plan "was more her idea than [defendant's]").

Here the critical issue for the jury was whether appellant was subjectively aware that he

was engaged in unlawful activity at the time he assisted in obtaining money through the forged

checks. Appellant sought to establish that his assistance in the scheme was innocent. He asked

the trial court to admit the letter he composed in which Dong who forged the checks declared

appellant lacked knowledge that what the two men were doing was unlawful. In order for the

letter to meet the hearsay exception requirements, it was necessary for appellant to have Dong

sign the letter adopting its contents and, critically, to agree to those portions of the letter incriminating to Dong. Moreover, in order to satisfy the requirements for admitting a declaration against penal interest, appellant bore the burden of proving that at the time he signed the letter Dong was subjectively aware that he was making incriminating statements.

As the trial date drew closer, appellant approached Dong at a shopping mall with his typewritten letter and asked him to sign it. Significantly, Dong did not spontaneously make the incriminating statements to appellant or to any third party. The letter was not addressed to any particular person, but "To Whom It May Concern," and was undated. Dong did not initiate the writing of the letter nor compose its contents. He merely acceded to appellant's request by writing his first name on the bottom of the typed letter. Dong also admittedly had a limited understanding of English.[7]

When Dong was asked under oath whether the statement that appellant "did not know anything about this" was true, Dong replied, "I guess not." He explained, "Well, just, you know, what we did we did at the same time you know" and that he only signed it because "by then I was helping him a little bit. So maybe friendship, I guess." He also denied that he owed Tran money as alleged in the letter.

Based on the evidence presented, the trial court determined that appellant failed to prove that Dong was subjectively aware that signing the letter was against his penal interest. The trial court correctly excluded the letter as hearsay.[8]

---

[7] Dong required an interpreter to translate appellant's questions during his examination as a witness. When asked if he was able to speak English pretty well, Dong responded, "I don't think so." When asked if he understood a lot of appellant's questions, Dong replied, "I guess." When asked if he was able to read English, Dong responded, "A little bit."

[8] Because we hold that the trial court properly excluded the letter as hearsay, we do not address appellant's assertion that Dong's purported comment as to appellant's state of mind was fact rather than inadmissible opinion. See Evans-Smith, 5 Va. App. at 196, 361 S.E.2d at 441 (finding that the trial court correctly excluded witness' statement as inadmissible opinion).

Appellant did not challenge that the checks were fraudulently cashed on March 25, 2002. The sole issue before the jury was appellant's culpable state of mind, whether he knowingly participated in the fraudulent scheme. The evidence established that on Saturday morning, March 25, 2002, Dong and appellant traveled to six different First Virginia Bank branches in less than ninety minutes. At each bank, appellant assisted Dong in cashing a single check. Each check was made payable to Troy Dow. In order to cash the checks, appellant admitted that he wrote the account number on each check as Dong read that information to him and that he then handed Troy Dow's driver's license to the teller. Appellant knew that Giang Dong was not Troy Dow and that Troy Dow was not riding in the car with them that day. From the evidence, the jury concluded that appellant knowingly participated with Dong in the fraudulent check-cashing scheme.

From the record before us, we conclude that the trial court did not err in ruling that Giang Dong did not waive his Fifth Amendment privilege against self-incrimination and that he was therefore unavailable as a witness. We also conclude that the trial court did not err in excluding the typewritten letter appellant prepared and Dong signed as hearsay and that it did not satisfy the requirements for admissibility as a declaration against penal interest hearsay exception.

Affirmed.